*634 OPINION OF THE COURT
Eli Wager, J.
This is a petition brought by the New York State Office of Mental Retardation and Developmental Disabilities seeking an order directing the coconservators to (1) establish a burial account in the amount of $1,500 and a patient account in the amount of $3,000; (2) pay the outstanding statutory claim of the State; and (3) file a final account. The coconservators cross petition this court for an order (1) dismissing the State’s petition; (2) directing coconservators to file a final account; and (3) directing the coconservators to transfer the property of the conservatee Anthony Gonzalez into a supplemental needs trust.
BACKGROUND
The conservatee, Anthony Gonzalez (conservatee), is a 21-year-old retarded male presently residing at an Intermediate Care Facility (ICF) located in Suffolk County. Prior to September 1989, the conservatee lived with his parents in their Lindenhurst home. Thereafter, from September 1989 to December 1989, while awaiting placement at an ICF, the conservatee was a resident of Kings Park Psychiatric Center. In December 1989, he was transferred to the Long Island Developmental Center, an ICF owned and operated by the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), petitioner in this proceeding. Thereafter, since March 1991, the conservatee has been residing in an ICF administered by the Maryhaven Center of Hope and licensed by OMRDD.
The cost of maintaining the conservatee at these facilities has heretofore been borne by the Federal, State and Suffolk County Governments through the Medicaid program. The State, claiming that the conservatee possesses funds rendering him ineligible for Medicaid, now seeks to recoup these expenses on the ground they were incorrectly paid.
In fact, it is undisputed that the total value of the conservatee’s estate exceeds $100,000. These assets were obtained by the 1977 settlement of a medical malpractice action brought on the conservatee’s behalf (Gonzalez v Fuchs & Interboro Hosp.). Pursuant to the infant’s compromise order, Ramiro Gonzalez, as father of Anthony Gonzalez, was paid $62,333.40 for injuries sustained by Anthony at birth. In 1989, after Anthony reached his majority, his parents were appointed *635 coconservators of his property (Meade, J., Apr. 18, 1989). By this time, Anthony’s assets had increased through interest payments to $161,146. When the coconservators filed their annual account in 1989, the total value of the estate was $139,000.
In an attempt to avoid the depletion of the conservatee’s assets, the coconservators have cross-petitioned this court to transfer the assets of the conservatee into a supplemental needs trust.
For the reasons stated below, the State’s petition is granted in its entirety and the cross petition brought by the coconservators is dismissed.
Unlike correctly paid medical assistance, which, pursuant to Social Services Law § 369, may not be recovered, incorrectly paid medical assistance, "may be recouped even during the recipient’s lifetime, as it is not subject to the constraints of Social Services Law § 369” (Matter of Rhodes, 148 Misc 2d 744, 747 [Sur Ct, NY County 1990]; see also, Matter of Colon, 83 Misc 2d 344 [Sur Ct, Kings County 1975]).
Contrary to the coconservators’ arguments, the State properly commenced a proceeding pursuant to Social Services Law § 104 to recover what it deemed to be incorrectly paid medical assistance. No formal determination by the agency is required, nor are the coconservators entitled to a fair hearing (18 NYCRR 358-3.1 [¶] [6]). It is for this court to determine whether the medical assistance provided to the conservatee was incorrectly paid, which if found to be incorrectly paid, would allow the State to recoup said incorrectly paid assistance.
As the coconservators note, Medicaid is incorrectly paid if during the period he received Medicaid, the recipient has resources above the limits allowed by law. The coconservators’ attempt to convince this court that the more than $100,000 the coconservators possess for the conservatee were not available or liquid, must fail.
The coconservators’ reliance on Navarro v Sullivan (751 F Supp 349 [ED NY 1990]) is misplaced. That decision did not hold that tort settlements are never "resources”. Rather, in that case, a judicially approved settlement order, made on behalf of a disabled adult specifically provided that the settlement proceeds could not be used for housing costs, upkeep and medical costs or maintenance needs for the disabled adult for which public funds are available. In holding that, in that case, *636 the proceeds of the particular settlement were not a resource, Judge Eugene Nickerson noted that the individual in question did not have a right or power to liquidate the funds for support and maintenance.
In contrast, in the case at bar, once the conservatee reached his majority, there were no longer restrictions on the settlement proceeds. As opposed to Navarro v Sullivan (supra), here there is simply no order limiting the conservatee’s use of the money, either presently or during the time he was receiving medical assistance.
Parenthetically, this court must express its strong disagreement with the terms of the compromise order which settled Navarro’s underlying personal injury action in the Supreme Court, Kings County. Customarily, the proceeds of settlement in such cases are delivered to a parent or guardian in joint control with an officer of a bank or banks. Future disposition of the proceeds generally requires the appointment of a conservator or committee, or, at the least, a separate application to the court. In Navarro (supra), the trial court was presented with an order of compromise which also finally distributed the proceeds of settlement.
And unlike Hughes v Physicians Hosp. (149 Misc 2d 661 [Sup Ct, Queens County, Jan. 28, 1991, Kassoff, J.]), where the Hughes court approved the transfer of settlement proceeds awarded to an adult who had been born brain damaged, directly to a supplemental needs trust, here the conservatee has been in possession of the funds all the while he was receiving medical assistance. The Hughes court did not hold that settlement proceeds are never to be considered a resource.
The court also notes that Justice Kassoff in Hughes v Physicians Hosp. (supra, at 665) specifically declined to appoint a conservator or committee stating: "[A] conservator or committee might not be able to fully take advantage of the present rules regarding eligibility for benefits, since a committee or a conservator would be required to use any settlement proceeds of the disabled person for all his needs, and it could be found that they would then have the 'right, authority or power’ to liquidate the assets, thereby making these proceeds 'resources’ ”.
Thus, the court finds the coconservators’ arguments that these assets were unavailable to be without merit. (See also, Himes v Sullivan, 779 F Supp 258, 262 [WD NY 1991], affd *637 without opn 956 F2d 1159 [2d Cir 1992], where the District Court in finding the Secretary’s view that the principle of "availability” as set forth in 42 USC § 1396a [a] [17] was intended "to guard against the [imputation] of unrealized income from one person to another” was reasonable, rejected the argument that only money in the hands of or actually available to a Medicaid recipient may be considered in the calculation of countable income.)
Because this court finds that during the period he was receiving medical assistance, the conservatee had available liquid resources rendering him ineligible for Medicaid, it follows that any medical assistance payments were incorrectly paid, entitling the State to recoup said payments. There is simply no support for the coconservator’s attempt to place the conservatee’s funds in a supplemental needs trust fund to avoid paying this existing obligation. Not only would allowing such a transfer violate EPTL 7-3.1 (a) and (c), it also violates public policy.
"EPTL 7-3.1 (a) decrees that '[a] disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator’. The statutory language is abundantly clear and unequivocal that self-settled trusts are void as against creditors” (State of New York v Hawes, 169 AD2d 918, 920 [3d Dept 1991], citing Vanderbilt Credit Corp. v Chase Manhattan Bank, 100 AD2d 544 [2d Dept 1984]; see also, State of New York v Coyle, 171 AD2d 288 [3d Dept 1991]).
Here, pursuant to the proposed trust, the trustee would have the discretion to invade principal for purposes of securing appropriate housing. The income would be distributed for the unspecified and undefined "special needs” of the conservatee. The proposed trust also provides that the principal will not be invaded nor will income be distributed if it will result in denial, discontinuance or reduction of any government entitlement.
As this proposed trust provides the trustee with limited discretion to use the trust for the creator, said trust would be void as to existing creditors. This court cannot approve a trust whose purpose is to avoid paying an existing obligation. Moreover, a recent amendment to the EPTL specifically provides: "A provision in any trust, other than a testamentary trust, which provides directly or indirectly for the suspension, termination or diversion of the principal, income or beneficial interest of either the creator or the creator’s spouse in the *638 event that the creator or creator’s spouse should apply for medical assistance or require medical, hospital or nursing care or long term custodial, nursing or medical care shall be void as against the public policy of the state of New York, without regard to the irrevocability of the trust or the purpose for which the trust was created” (EPTL 7-3.1 [c]; L 1992, ch 41, §86).
The proposed trust, which would allow no distribution of income or invasion of principal if it would result in denial or discontinuance of a government entitlement, would also be void under this new section of the EPTL, which was approved on April 2, 1992 and effective immediately for those trusts created after the effective date (L 1992, ch 41, § 165 [i]).
Finally, the coconservator makes much of a purported public policy of allowing victims to enjoy an acceptable quality of life by creation of such trusts. However, it is beyond cavil that the Federal and State programs which provide medical assistance require the recipients to be in need of such assistance. Said programs have limited funds, which necessarily result in rules requiring the disqualification of many individuals who have serious medical problems as well as severe monetary shortages. To allow an individual with funds exceeding $100,000 to transfer said funds for the admitted purpose of avoiding an existing obligation to pay for his own care and allowing him to qualify for publicly funded medical assistance simply encourages artificial and contrived impoverishment at the expense of society (see, Bagge, The Eye of the Needle: Trust Planning, Medicaid and the Ersatz Poor, 64 NY St BJ 14 [Feb. 1992]).
CONCLUSION
In closing, the court notes that while it does sympathize with the conservatee, neither this Nation nor this State has a system of public health insurance. Until such time, if ever, that such a system is created, all individuals in this country are required to pay for their own care, if they possess the means so to do.
For all the reasons stated above, the State’s petition is granted in its entirety and the coconservators’ cross petition is dismissed.