OPINION OF THE COURT
Rosemary S. Pooler, J.
Petitioner Beth Mills has applied for approval of an infancy settlement on behalf of her four-year-old daughter, Elaine Mills. Under the proposed settlement, defendants’ insurer would pay $25,005 to the infant’s attorney (fee and disbursements) and $74,995 to create a structured settlement for Elaine’s benefit. Payments under the structure would be made to a trust. The terms of the trust forbid expenditure of trust funds for items which would otherwise be covered by any public assistance program.
This matter came on during my ex parte term. Because the Onondaga County Department of Social Services (the Department) had already paid $875 in Medicaid benefits on Elaine’s behalf[1] and because Elaine’s family is currently certified as eligible for Medicaid (although not in receipt of Medicaid benefits), I directed notice be given to the Department. After being notified, the Department appeared in opposition to approval of the settlement agreement insofar as it authorized the creation of a trust. The matter was then adjourned for briefing and decision.
FACTS
Elaine Mills was struck by a car operated by defendant Sara Durst and owned by defendant Mark Durst on July 25, 1991. The vehicle had a maximum liability insurance limit of $100,000 and according to the infant plaintiff’s attorney, the defendants have no other significant assets.
As a result of the accident, Elaine incurred severe brain *678 injury. According to the affidavit of one of her attending physicians:
"because of the cerebral edema and contusions to different parts of Elaine’s brain she will always have significant neurologic difficulty and handicap. She will have life-long difficulty in the areas of motor control, speech and language delay. * * *
"Elaine Mills will not throughout her life, either as a child or an adult, have the physical or mental capabilities to manage herself or her affairs due to the permanent and irreversible brain damage that she suffered in the accident of July 25, 1992 [sic]. ”
At the time this application was made, Elaine lived in a rehabilitation center but her imminent release to home care was anticipated.
Because of the severity of Elaine’s physical and mental disabilities, her case manager has recommended extensive equipment and treatment for her which will be covered neither by insurance nor by governmental programs.
The annual income for Elaine’s family of four is $27,000. Because Elaine’s mother will be her primary caretaker, there is little prospect that this figure will increase significantly in the short term.

The Proposed Settlement and Trust Agreement

Under the terms of the structured settlement as proposed by the petitioner, the defendants’ insurance company or its assignee will purchase an annuity contract which will pay Elaine Mills’ trustee (her grandfather) for the benefit of Elaine: (1) $600 per month for Elaine’s lifetime (these payments to be guaranteed for a period of 10 years), and (2) additional payments of $1,273 per month commencing on January 6, 2006 (these payments to terminate upon the death of Elaine Mills).
Under the order and trust agreement submitted to the court, the trustee is authorized on an annual basis to use all of the income coming into the trust for nonbasic medical and rehabilitative items (including specialized rehabilitation programs, physical, occupational and speech therapy; medical supplies and equipment; purchase or lease of a van for wheelchair transport, home aide services) and architectural renovations to the residence necessary to accommodate Elaine. He must file an annual accounting with the court. The trustee is *679 barred from using either trust income or principal for any expenses which would otherwise be covered by a government benefit program or by any private agency. The trust agreement provides that in the event of Elaine’s death or if the benefits from or the existence of the trust jeopardize her eligibility for any governmental program or a claim is made by a governmental agency or body against the trustee for reimbursement of benefits paid, such eligibility determination, claim or request for disposition of the trust principal is to be heard in this court.
Trusts which like this one authorize use of funds for medical and other needs of the beneficiary but forbid their use for needs which can be covered by Medicaid are often referred to as supplemental needs trusts (SNT’s) and have been the source of considerable legal controversy.
LEGAL ISSUES PRESENTED
This application to create an SNT presents two significant questions: First, can the court under CPLR 1206 approve a settlement which includes a trust and which continues payments into that trust (thus depriving the infant of control over her funds) past the age of majority? Second, will the existence of this trust threaten Elaine’s eligibility for medical assistance (which this infant will almost certainly need)? Corollary to the second question is consideration of whether public policy concerns contained in EPTL 7-3.1 (c) militate against the creation of a trust which will shelter Elaine’s income from the public authorities even if the trust will not technically threaten her eligibility for medical assistance.

CPLR 1206 Issues

CPLR 1206 provides concerning the disposition of an infant’s settlement proceeds:
"Except as provided in EPTL 7-4.9, any property to which an infant, a person judicially declared to be incompetent or a conservatee is entitled, after deducting any expenses allowed by the court, shall be distributed to the guardian of his property, the committee of his property or conservator to be held for the use and benefit of such infant, incompetent or conservatee except that * * *
"(c) the court may order that money constituting any part of the property be deposited in one or more specified insured banks or trust companies or be invested in one or more *680 specified accounts in insured savings and loan associations, or it may order that a structured settlement agreement be executed, which shall include any settlement whose terms contain provisions for the payment of funds on an installment basis * * * This money is subject to withdrawal only upon order of the court, except that no court order shall be required to pay over to the infant who has attained the age of eighteen years all moneys so held unless the depository is in receipt of an order from a court of competent jurisdiction directing it to withhold such payment beyond the infant’s eighteenth birthday. Notwithstanding the preceding sentence, the ability of an infant who has attained the age of eighteen years to accelerate the receipt of future installment payments pursuant to a structured settlement agreement shall be governed by the terms of such agreement. ” (Emphasis supplied.)
In DiGenarro v Community Hosp. (NYLJ, Mar. 20, 1992, at 27, col 6), Justice Gerard declined to approve a supplemental needs trust as part of an infancy settlement, finding that he lacked authority to direct the distribution of settlement proceeds in a manner not specifically set forth in CPLR 1206 and indicating his concern that although the infant had not been formally adjudicated an incompetent, an SNT would deprive her of control over her property forever.
The second part of Justice Gerard’s analysis is not persuasive here because Elaine’s treating physician has stated that her mental incapacity is permanent. Courts should not "shut their eyes to the special need of protection of a litigant actually incompetent but not yet judicially declared such.” (Sengstack v Sengstack, 4 NY2d 502, 509.) In addition, I believe CPLR 1206 explicitly provides for settlements which restrict the use of an infant’s funds beyond the age of the infant’s minority. CPLR 1206 (c) states: "no court order shall be required to pay over to the infant who has attained the age of eighteen years all moneys so held unless the depository is in receipt of an order from a court of competent jurisdiction directing it to withhold such payment beyond the infant’s eighteenth birthday” (emphasis supplied). This sentence contemplates restraints on an infant’s access to settlement funds after the infant becomes an adult if the court finds restriction to be necessary in the infant’s best interests. While the court’s discretion should rarely be exercised to restrict access to settlement proceeds after an infant reaches the age of 18, the court cannot avoid making this determination where the infant’s best interests require it.
*681 The most significant factor in the decision as to whether or not to restrict an infant’s control over settlement proceeds after the age of 18 is whether there is a reasonable possibility that the infant will become a competent adult. Here it does not appear that there is and therefore, the court should not, in a rote fashion, grant the same relief it would for a child who will presumably become a competent adult.
In this particular case, the question of whether an order depriving Elaine Mills of control over her funds after the age of 18 would be a wise exercise of discretion also depends on factors related to Elaine’s eligibility for Medicaid and other public entitlements which will be addressed below.
Before reaching the issues of Medicaid eligibility, however, there remains, with respect to CPLR 1206, the question of whether or not the creation of a trust fund is precluded because not specifically mentioned in the statute (the basic holding of Justice Gerard in DiGenarro v Community Hosp., NYLJ, Mar. 20, 1992, at 27, col 6, supra).
It should be noted first that the trust contemplated in DiGenarro (supra) was quite different from that proposed here. The court in DiGenarro noted that the trustee owed his allegiance to all possible beneficiaries of the trust rather than just the infant. Here, Elaine Mills is the sole beneficiary of the trust. The court also noted that the trustee would not be a court-appointed fiduciary and would be beyond the continuing jurisdiction of the court with respect to withdrawals, etc. The proposed trust agreement in this case, in contrast, authorizes the trustee to make withdrawals only for categories of expenses authorized by the order of the court, to maintain such funds as are unexpended in a bank account in Chase Lincoln Bank, a Federally insured banking institution, and to account to the court on a yearly basis. In addition, the court will order that the trustee post an undertaking.
Under these circumstances, the settlement vehicle contemplated here (a combined structured settlement and trust with the trust corpus to be deposited in an approved bank and withdrawals to be made only for purposes approved by the court) does not differ in any significant degree from those specifically set forth in the statute, i.e., the settlement proceeds will be deposited in an insured bank by a fiduciary who is responsible only to the infant and who is required to report to the court, to expend funds only for categories of expenses approved by the court, and to post a bond. I conclude, there *682 fore, that I am not precluded from authorizing an SNT if that vehicle is otherwise in the best interests of the child. The trust vehicle does not appear to deprive Elaine Mills of any of the protections mandated by statute and may offer her additional protection.

Medicaid Aspects

Since Elaine Mills will have severe and ongoing medical needs which cannot be met entirely through her parents’ insurance, consideration of whether or not the proposed SNT is in her best interests requires a consideration of its impact on her Medicaid eligibility.
The Department has cited EPTL 7-3.1 (c) as support for its belief that the supplemental needs trust proposed here will endanger Elaine Mills’ Medicaid eligibility.
EPTL 7-3.1 (c), added by Laws of 1992 (ch 41, § 86), provides: "A provision in any trust, other than a testamentary trust, which provides directly or indirectly for the suspension, termination or diversion of the principal, income or beneficial interest of either the creator or the creator’s spouse in the event that the creator or creator’s spouse should apply for medical assistance or require medical, hospital or nursing care or long term custodial, nursing or medical care shall be void as against the public policy of the state of New York, without regard to the irrevocability of the trust or the purpose for which the trust was created.”[2]
Would the court’s approval of an SNT (which authorizes *683 payments on behalf of the infant for medical and educational needs but not for those medical or educational needs which would otherwise be funded by Medicaid) create a self-settled trust within the meaning of EPTL 7-3.1 (c)? And, if it does create a self-settled trust, does the trust contemplated here provide for "the suspension, termination or diversion of the principal, income or beneficial interest of either the creator or the creator’s spouse in the event that the creator or creator’s spouse should apply for medical assistance or require medical, hospital or nursing care or long term custodial, nursing or medical care” and thus trigger the statute? Both questions must be answered in the affirmative before Elaine’s Medicaid eligibility is endangered.
Nothing on the face of EPTL 7-3.1 (c) suggests that proceeds of an infant’s accident settlement placed in trust by the insurance company payor by court order (made in the process of approving the infancy settlement) and under court supervision would be considered self-settled or that the wording of the particular trust under review here should be considered a suspension, termination or diversion of principal, or beneficial interest away from Elaine.
Moreover, while the State legislative history for EPTL 7-3.1 (c) (apart from the reports of various New York State Bar Committees disapproving the measure) is scanty, it gives no indication that the creation by courts of a trust to protect the accident recovery of an infant or incompetent plaintiff is an evil the Legislature intended to remedy.
A review of the case law indicates that no New York court has considered an issue identical to the first presented here, i.e., whether a trust created for an infant by court order and as part of a settlement agreement is a self-settled trust within the meaning of EPTL 7-3.1 (c).
However, prior to the effective date of EPTL 7-3.1 (c), three New York courts indicated approval of the use of a supplemental needs trust or other restrictions on the use of settlement proceeds to preserve the Medicaid or SSI eligibility of an infant or disabled beneficiary. (Navarro v Sullivan, 751 F Supp 349 [ED NY 1990] [court-ordered restrictions (imposed as part of settlement of malpractice action) on use of settlement proceeds did not bar incompetent from receipt of SSI]; Hughes v Physicians’ Hosp., 149 Mise 2d 661 [Sup Ct, Queens County 1991] [court-approved SNT in which settlement proceeds flowed directly to trustee as part of settlement of medical *684 malpractice action; court declined to appoint conservator because of its concern that passage of the funds through the hands of the conservator would make them available for public assistance]; Estate of Varkey, NYLJ, Apr. 26, 1991, at 27, col 1 [SNT approved as part of compromise of wrongful death action].)
Both prior to and after the enactment of EPTL 7-3.1 (c), several New York courts indicated disapproval of SNT’s for incompetents or infants who already had a vested right in the proposed trust corpus at the time the court was called on to approve the SNT.[3] (See, Matter of Aspinall, NYLJ, Jan. 23, 1992, at 27, col 4 [Sup Ct, Queens County] [court declines to authorize an SNT for estate proceeds which had already passed into hands of adult incompetent’s conservator]; Matter of Cangelosi, 155 Misc 2d 621 [Sup Ct, Suffolk County] [disapproval of SNT for existing proceeds of medical malpractice action]; Matter of Gonzalez, 154 Misc 2d 633 [Sup Ct, Nassau County] [court, distinguishing Hughes and Navarro, supra, refuses approval of SNT for proceeds of medical malpractice action which have been in conservator’s hands for several years]; Matter of Shaw, NYLJ, July 8, 1992, at 33, col 1 [court finds that an SNT for tort awards for mentally retarded adult would run afoul of EPTL 7-3.1 (c) because ward would be considered the settlor and trust provided that no income was to be distributed if it would result in the denial, discontinuance or reduction of any government benefit]; Matter of Daley, NYLJ, Sept. 16, 1992, at 25, col 2 [Surrogate Radigan, the author of Shaw and Varkey, supra, applies the reasoning of Shaw to funds due an incompetent ward from his father’s estate]; Matter of Moretti, NYLJ, Oct. 20, 1992, at 25, col 4 [Sup Ct, Kings County] [disapproves SNT for settlement proceeds already held by conservator, indicating that the resulting trust would violate EPTL 7-3.1 (c)]; Estate of Arens, NYLJ, Nov. 6, 1992, at 26, col 2 [disapproving SNT for estate proceeds, trust deemed self-settled under EPTL 7-3.1 (c) despite intervention of guardian on ward’s behalf]; Matter of Daniel, NYLJ, Apr. 8, 1992, at 33, col 6 [Sup Ct, Queens County] [disapproval of SNT for funds in two inter vivos trusts to which adult incompetent had absolute right].)
In sum, the case law disapproving of SNT’s under New York *685 State law has focused on instances where the infant or incompetent already has a legal right to the money which will become the trust corpus.
In contrast, the questions of whether a trust created as part of an infancy settlement before the infant has a legal right to the proceeds of the settlement is self-settled and thus subject to EPTL 7-3.1 (c) and whether the trust proposed here contains a "suspension, termination or diversion of the principal, income or beneficial interest of either the creator or the creator’s spouse in the event that the creator or creator’s spouse should apply for medical assistance or require medical, hospital or nursing care or long term custodial, nursing or medical care” appear to be questions of first impression in this State.
In determining who is the creator or settlor of such a trust within the meaning of EPTL 7-3.1 (c) it is necessary to refer to EPTL 1-2.2 which defines creator as "a person who makes a disposition of property.” "Disposition” is, in turn, defined as "a transfer of property by a person during his lifetime or by will.” (EPTL 1-2.4.) The Department urges that although Elaine Mills has no current legal right to receive the settlement amount in this matter, it is her cause of action which is being given up and therefore she is providing the consideration for the trust and must be considered the settlor. (See generally, 1 Bogert, Trusts and Trustees § 41 [2d rev ed 1984].)
To accept the Department’s interpretation, however, would be to ignore the pervasive role this court is required to play in determining the disposition of these proceeds. An infant’s claim cannot be compromised without court approval. (CPLR 1207.) And, only the court can decide (within the statutory framework) how the proceeds of the settlement are to be disbursed. Under these circumstances, the infant should not and cannot be considered the creator of the trust. The infant has no legal right to the proceeds when the trust is approved, the infant plays no part in the decision-making process, and the moneys actually come from the insurance company and go directly into the trust without passing through the hands of the infant or his natural guardians. (See, Kegel v State of New Mexico, 113 NM 563, 830 P2d 563 [1992]; cf., Hughes v Physicians’ Hosp., 149 Misc 2d 661, supra.)
In addition, the trust instrument here does not divert income away from the beneficiary in the way contemplated by EPTL 7-3.1 (c). The monies paid for Elaine Mills’ care under *686 this trust will be exactly the same whether she is or is not in receipt of Medicaid, whether she does or does not "require medical, hospital or nursing care or long term custodial, nursing or medical care”. There is no "suspension, termination or diversion of the principal, income or beneficial interest” of Elaine Mills under any circumstance except her death.
Policy considerations do not compel a contrary result. Although EPTL 7-3.1 (c) was adopted, in part, to ease a difficult budgetary situation, there is no indication on the face of the statute or in the legislative history that the Legislature considered trusts approved by courts for the settlement proceeds of infants (as opposed to self-settled trusts by wealthy grantors) to be the evil to be remedied by the statute. Without a direct indication that the Legislature intended EPTL 7-3.1 (c) to intrude on the long-existing mandate that courts consider only the best interests of the child in approving an infancy settlement, I am loathe to infer one.
Moreover, substantial and long-standing New York case law indicates that the public policy interest of minimizing expenditures for public benefits is secondary to that of protecting infants’ funds. (See, e.g., DeMarco v Seaman, 157 Misc 390 [Sup Ct, Queens County 1934]; Leon v Walker, 1 Misc 2d 219 [Sup Ct, NY County 1955]; Matter of Woods v Mason, 32 Misc 2d 745 [1961]; Franklin v Newberry, 77 Misc 2d 1042 [Civ Ct, Queens County 1974].)
In generally addressing the purposes for which infancy funds can be released, Justice Cuff stated in DeMarco (supra, 157 Misc, at 395): "The infant’s money was awarded to compensate him for his pain, his suffering and his incapacity occasioned by the accident — not to purchase necessaries for him during his minority. The law obligates the father to provide those necessaries. If he fails in this duty, those agencies should act that provide necessaries for infants without such funds. I am not dealing with infants who possess inheritances but with crippled children each of whom happens to have a small sum of money in place of a normal body. Today taxpayers are contributing huge sums to be used for the relief of the distressed. No exception is reserved by the taxpayer to withhold financial aid from the families of these unfortunate children or from the children themselves.”
Finally, the trust proposed in this matter does not contain any of the offensive provisions that moved several of the other courts to reject the creation of a supplemental needs trust. *687 Unexpended funds do not go to the heirs of Elaine Mills. The trustee is required to make annual accountings to the court. Funds from the trust can only be expended for categories of expense approved by the court. Finally and most importantly, the proposed trust and order are so drafted as to ensure that the items purchased with trust funds are medical and educational necessities which will not be covered by Medicaid.
In describing the benefits of SNT’s to severely disabled individuals such as Elaine Mills, elder-law expert Georgiana D. Vassiliou stated: "At inception Medicaid was supposed to provide all 'medically necessary’ care to program recipients. However, persistent regulatory and legislative cutbacks, plus agency policy rationing now means that much medically necessary care is just not given.” (Vassiliou, The Case for Supplemental Needs Trusts, NYLJ, July 28, 1992, at 1, col 1, at 5, col 1.)
She further stated: "SNT funds can be used to swap a warehouse existence for a personalized holistic social plan of care at home or in some other community setting.” (Id., at 5, col 2.) It is just such a purpose which is envisioned for this trust. Funds coming into the trust from the structured settlement will be used to buy equipment and services which will help Mr. and Mrs. Mills to maintain Elaine at home rather than in an institution. These expenditures may well ultimately save the various Federal, State and local agencies far more because Elaine will not be institutionalized than they will lose from the meager income available to Elaine from her trust.
The settlement agreement, trust agreement, and order presented are approved in principle. Counsel are requested to confer with the court for the purpose of making certain minor technical revisions. The trustee is to furnish a bond in the amount of $7,200, to be increased to $22,500 as of January 2006.

. The Department has acknowledged that Elaine is not required to reimburse this amount.

. The Department has not argued that the analogous Federal provision, 42 USC § 1396a (k), applies here. That statute defines a Medicaid qualifying trust as "a trust, or similar legal device, established (other than by will) by an individual (or an individual’s spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual” (42 USC § 1396a [k] [2]).
Once it is established that a trust is a Medicaid qualifying trust, the maximum amount that the trustee is permitted to distribute to the beneficiary under the terms of the trust is deemed available for purposes of calculating Medicaid eligibility. (42 USC § 1396a [k] [1].)
It is apparent that EPTL 7-3.1 (c) sweeps more broadly than 42 USC § 1396a (k). This deviation from Federal standards prompted several New York State Bar Association committees commenting on the proposed legislation to disapprove it. (See, Legislation Reports of Comm on Social Services, General Practice Section, Trusts and Estates Law Section, Elder Law Section and Comm on Public Interest of the NYS Bar Assn, Bill Jacket, L 1992, ch 41.)

. Matter of DiGenarro (supra) disapproved an SNT under circumstances similar to those presented here, i.e., as part of an infancy settlement but for different reasons and without reference to EPTL 7-3.1 (c).