**Lory Ann RAMEY and Renee M. Farmer, Plaintiffs,**

**and**

**Sherry S. Shupe, Plaintiff–Intervenor,**

**v.**

**James T. RIZZUTO, in his official capacity as Executive Director of the Colorado Department of Health Care Policy and Financing[1], Defendant.**

No. CIV. A. 98–WM–1261.

United States District Court, D. Colorado.

Oct. 1, 1999.

---

1. James T. Rizzuto was substituted for Barbara McDonnell as the named defendant in this matter by a February 23, 1999 Order of the Court.

R. Eric Solem, David F. Steinhoff, Solem, Mark & Steinhoff, P.C., Englewood, CO, for Lory Ann Ramey, Renee M. Farmer.

Ann Hause, Attorney General's Office, Denver, CO, for Barbara McDonnell, Colorado Dept. of Health Care Policy and Financing.

Mary Helen Miller, Boulder, CO, for Sherry S. Shupe.

## ORDER ON RECOMMENDATIONS OF MAGISTRATE JUDGE

MILLER, District Judge.

This matter is before me on the recommendations of Magistrate Judge Patricia A. Coan, issued June 1, 1999, and July 6, 1999. The parties have filed objections to the recommendations.[2] 28 U.S.C. § 636(b). I have reviewed *de novo* the parties' motions and briefs, the recommendations, and the parties' objections and responses thereto.

### June 1, 1999 Recommendation

The June 1, 1999 recommendation addresses the following motions for summary judgment:

1. Defendant's motion for summary judgment, filed August 28, 1998;

2. Plaintiffs' cross-motion for partial summary judgment, filed September 30, 1998;

3. Defendant's motion for summary judgment, filed October 20, 1998;[3] and

---

2. Unless otherwise indicated, "plaintiffs" refers to plaintiffs Lory Ann Ramey and Renee Farmer as well as plaintiff-intervenor Sherry Shupe.

3. Defendant filed supplemental authority in support of its motion for summary judgment on March 8, 1999.

4. Plaintiff–Intervenor's cross-motion for summary judgment, filed November 19, 1998.

I address the issues presented in these motions as they are presented in the recommendation.

I agree with the recommendation that plaintiffs'· claims are properly. presented pursuant to 42 U.S.C. § 1983, that defendant correctly analyzed plaintiffs' trusts under 42 U.S.C. § 1396a(k) (repealed), that 42 U.S.C. §§ 1396a(a)(17)(b) and 1396c do not preempt 10 C.C.R. 2505–10, § 8,110.52; and that the doctrines of *res judicata* and collateral estoppel do not bar relitigation of the Shupe trust.[4]

I also agree that Ramey and Shupe, as recipients of Social Security benefits, are categorically eligible for Medicaid benefits without regard to the terms of their trusts. Because I accept the recommendation on this issue, I do not reach the question of whether the Ramey and Shupe trusts are Medicaid qualifying trusts (MQTs) for purposes of determining their eligibility for Medicaid benefits.[5]

With regard to the claims asserted by plaintiff Farmer, I agree that there are factual issues regarding the termination of the trust and transfer of assets that preclude summary judgment.

Finally, I observe that the Magistrate Judge did not reach Shupe's claim that the administrative law judge's finding the Shupe trust to be a MQT was erroneous as a matter of law and arbitrary and capricious in violation of due process because the summary judgment record was incomplete. With its objections to the recommendation, defendant provides a copy of the ALJ's order and requests that I grant

summary judgment in his favor on this claim. Although I have agreed with the recommendation that the denial of benefits to Shupe did not comply with federal law, I leave the due process/arbitrary and capricious issues to be resolved on a more complete record.

The recommendation does not clearly address plaintiffs' claims that administrative proceedings provided by defendant violated their due process rights to a fair hearing. In the later recommendation, discussed below, Magistrate Judge Coan asserts summary judgment should be denied on due process issues due to an incomplete record. I accept the June 1, 1999 recommendation on this issue, as clarified by the later recommendation.

### *July 6, 1999 Recommendation*

The July 6, 1999 recommendation covered the plaintiff class's motion for summary judgment on class claims, filed May 13, 1999; defendant's motion for summary judgment on amended complaint, filed May 17, 1999; and the parties' stipulation regarding the order of reference and conduct of class action, filed June 17, 1999. The recommendation adopts the conclusions from the June 1, 1999 recommendation, as adapted to the class claims. The parties filed timely objections to this recommendation. 28 U.S.C. § 636(b).

After review of the underlying motions, the recommendation, and the objections, I conclude the recommendation should be accepted except for its conclusion that the plaintiffs' ninth claim for relief (preemption) should be granted. Recommendation, at 9. I find that this conclusion is

---

4. With the exception of the conclusion that defendant correctly applied section 1396a(k) to the trusts at issue, no party objected to these portions of the recommendation.

 Plaintiff Farmer filed a separate objection to the recommendation, arguing that section 1396a(k), repealed in 1993, no longer applies to trusts created prior to its repeal. She asserts that defendant erred in reviewing her case by failing to apply the POMS methodology.

As observed in the text, however, I accept the recommendation on the issue of the applicability of section 1396a(k). Farmer's separate objection is overruled.

5. Because each trust must be considered individually for purposes of determining its status as an MQT, my determination that I need not reach this issue with regard to the Ramey and Shupe trusts has no impact on the class claims.

most likely a clerical error; elsewhere in the recommendation and in the cited portions of the June 1, 1999 recommendation, Magistrate Judge Coan determined that plaintiffs' preemption claims should be dismissed.[6] *See* Recommendation at 7; June 1, 1999 recommendation at 23–24, 30.

Accordingly, it is ordered:

1. The June 1, 1999 recommendation issued by Magistrate Judge Coan is accepted, except that I do not reach the issue of whether the Ramey and Shupe trusts are Medicaid qualifying trusts (MQTs) for purposes of determining their eligibility for Medicaid benefits.

2. The July 6, 1999 recommendation is accepted, with the correction noted above.

3. Defendant's motions for summary judgment, filed August 28, 1998, and October 20, 1998, are granted in part and denied in part.

4. Plaintiffs' cross-motion for summary judgment, filed September 30, 1998, is granted in part and denied in part. This motion is denied with regard to Farmer's claim of improper assessment (third claim for relief) because of the existence of genuine issues of material fact.

5. Plaintiff-intervenor's cross-motion for summary judgment, filed November 19, 1998, is granted in part and denied in part.

6. The parties' cross-motions for summary judgment on the issues of whether the ALJ's decisions were arbitrary and capricious or otherwise violated plaintiffs' due process rights (sixth claim for relief) are denied due to the insufficient record before the court.

7. The Class motion for summary judgment on class claims, filed May 13, 1999, is granted in part and denied in part.

8. Defendant's motion for summary judgment on amended complaint, filed May 17, 1999, is granted in part and denied in part.

9. Judgment shall enter:

   a. declaring that the class may bring an action under 42 U.S.C. § 1983 for termination of Medicaid benefits (fifth claim for relief of amended complaint and fourth claim for relief of complaint in intervention);

   b. declaring that, as recipients of SSI benefits, Ramey, Shupe, and members of subclass (b) are categorically eligible for Medicaid benefits (second claim for relief of amended complaint and complaint in intervention);

   c. declaring that the state correctly found plaintiff Farmer's trust to be a countable resource;

   d. declaring that defendant shall reimburse Ramey, Shupe, and any class members for Medicaid benefits wrongfully terminated, as provided in the June 1, 1999 recommendation (and shall reinstate Shupe's home care services, if terminated);

   e. dismissing the amended complaint's first (repealed law), fourth (preemption), and eighth (countable resource) claims for relief with prejudice; and

   f. dismissing plaintiff-intervenor's third (preemption) and fifth (estoppel and waiver) claims for relief with prejudice.[7]

10. Ramey, Shupe, and the class members may recover their reasonable costs and attorneys' fees for their claims on which they were successful pursuant to 42 U.S.C. § 1988.

11. This case remains pending on the third (Farmer) and sixth (due process) claims for relief of the amended complaint and plaintiff-intervenor's sixth claim for relief (arbitrary and capricious).

---

6. The preemption claim is the fourth claim for relief. The ninth claim concerns Ramey's eligibility for Medicaid based upon her status as an SSI recipient.

7. The complaint in intervention contains two fifth claims for relief—one for estoppel and the other for waiver. Both claims are dismissed by this order.

12. The injunctive language recommended by Magistrate Judge Coan covers issues not reached and therefore is not necessary to this order.

13. The parties shall file statements regarding whether plaintiffs' first and ninth claims are rendered moot, with regard to these plaintiffs, by the finding that Ramey, Shupe and members of Subclass (b) are categorically eligible for Medicaid benefits.

## RECOMMENDATION OF MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

The matters before this court are Defendant's Motion for Summary Judgment [filed August 28, 1998]; Plaintiff's Cross–Motion for Partial Summary Judgment [filed September 30, 1998]; Defendant's Motion for Summary Judgment [filed October 20, 1998]; Plaintiff–Intervenor's Cross Motion for Summary Judgment [filed November 19, 1998]; and Supplemental Authority in support of Defendant's Motion for Summary Judgment [filed March 8, 1999]. A Special Order of Reference under 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b) referred the motions to the undersigned magistrate judge on November 18, 1998 to issue a recommendation regarding disposition. The motions were fully briefed and the court has determined that oral argument would not materially assist the recommendation.

### I. Background

Lory Ann Ramey, Renee M. Farmer and Sherry Shupe all suffer from multiple sclerosis and are permanently disabled citizens of the State of Colorado ("state" or "Colorado"). Amended Comp. ¶ 2; Comp. in Intervention, ¶ 1. Ramey has been on medical assistance since 1992, currently resides in an assisted living facility and receives benefits under the Social Security Act ("SSI").[1] Amended Comp. ¶¶ 2, 12A. Ramey has been the recipient of SSI benefits and Medicaid benefits since 1992. *Id,* ¶ 17B. Shupe has been the recipient of SSI benefits and resides in a home in Boulder assisted by a live-in aide. Comp. in Intervention, ¶ 13.

On July 22, 1992, Ramey's father, Donald Ramey, established an irrevocable trust with $50 for the benefit of his daughter and for the express purpose of protecting Ramey from losing Social Security and Medicaid benefits. In dissolution of marriage proceedings between Ramey and her spouse. Ramey's ex-husband was ordered to pay maintenance of $50 per month into the trust. Amended Comp. ¶ 38 and Exs. C, D. Ramey was given a life estate in the home and when the home was later sold, the sale proceeds were deposited into the trust. *Id,* ¶ 40, Ex. E. The trust was reviewed by the Social Security Administration and found to meet the Administration's requirements so that SSI and Medicaid benefits continued for Ramey. *Id,* ¶ 41. In 1998, Colorado reviewed the trust, which then had assets totaling approximately $90,000, considered it a Medicaid qualifying trust ("MQT")[2], and terminated Ramey's Medicaid benefits as of May 31, 1998. *Id,* ¶ 42, Exs. F, G.

Farmer was formerly the recipient of home based services and now resides in a full service nursing home *Id.,* ¶¶ 5, 12B, 45. Farmer received Medicaid benefits from April 1996 until December 21, 1997. *Id,* 45. With an inheritance from her mother, Farmer created an irrevocable special needs trust on December 30, 1992. *Id,* Ex. H. On March 24, 1997, Farmer was approved for services under the Colorado Home and Community Based Services

---

**1.** "SSI" or Supplemental security income benefits are provided under the Federal program of Supplemental Security Income for the Aged, Blind and Disabled established by Section 301 of the Social Security Amendments of 1977, P.L. 92–603, as amended and modified by P.L. 93066, and administered by the Social Security Administration. *See* 42 U.S.C. § 301 et seq.

**2.** A "Medicaid qualifying trust" is one which disqualifies an individual from receiving Medicaid benefits. Amended Comp., Ex. F.

Program, which provides home services to severely disabled persons who would otherwise be institutionalized, and was considered to have met Medicaid eligibility guidelines. *Id,* ¶ 46. When her medical condition deteriorated, Farmer was admitted to a full service nursing home in August 1997. *Id,* ¶ 47. When her trust was reviewed by the state in 1997, the trust assets were considered a countable resource and Farmer was no longer considered eligible for Medicaid. *Id,* ¶¶ 17A, 47, Exs. J, K. Farmer was advised she would be evicted from the nursing home unless the termination of her Medicaid eligibility was enjoined. *Id,* ¶ 52.

Intervenor Shupe raises substantially the same issues as plaintiff Ramey. *Id,* ¶ 18.[3] In January 1990, Shupe was found to be eligible for SSI benefits, which she has received since 1990. *Id.* On June 28, 1990, the Boulder County District Court appointed Shupe a *guardian ad litem* during the pendency of the Shupe dissolution of marriage proceedings. Response to State Motion for Summary Judgment and Plaintiff–Intervenor's Cross Motion for Summary Judgment, p.3. In case number 89–DR–1916–2, the Boulder Country District Court issued an Order for Creation of Authorized Trust for the Benefit of Sherry S. Shupe. *See* Comp. in Intervention, ¶ 18; Answer to Comp. in Intervention, ¶ 20.

On July 13, 1990, the Boulder County District Court ordered that Shupe's $10,000 share from the sale of the marital home be placed in trust and the Center for People with Disabilities made the trustee. Comp. in Intervention, Ex. B. In January 1998, the state concluded that the irrevocable trust was a MQT and terminated Shupe's Medicaid benefits effective August 31, 1998. *Id,* ¶ 22.

From January 1, 1990 until May 1997, Shupe lived in a nursing care facility in which she lay in a fetal position, was force-fed and required substantial skilled nursing care. Response to State's Motion for

Summary Judgment and Plaintiff–Intervenor's Cross Motion for Summary Judgment, p. 2; Comp. in Intervention, ¶ 14. On May 16, 1997, Shupe was approved for a Medicaid home care program and currently resides in a home assisted by a live-in aide. Comp. in Intervention, ¶ 17.

The denial of Farmer's Medicaid benefits proceeded to hearing before a state Administrative Law Judge ("ALJ"). Exceptions were filed and a final agency decision issued. *See* e.g., Comp., Ex. L; Answer to Amended Complaint, ¶ 28; Answer to Comp. in Intervention, ¶¶ 15, 16.

Plaintiffs contend that, as permanently disabled persons, they are entitled to Medicaid benefits as provided in the Colorado Medical Assistance Act, § 26–4–101, Colo. Rev.Stat. (1998). Plaintiffs seek declaratory and injunctive relief asking the court to declare that the state regulations analyzing trusts for purposes of eligibility under Medicaid are preempted by the Social Security Act; that the State has violated the Social Security Act; that their trusts are not MQTs; that Sections 1396(a)(17)(B) and 1383c of the Social Security Act have been violated; that Farmer's rights under 42 U.S.C. § 1396p(c)(1)(E)(i)(I) have been violated; that the State's regulations deprive Farmer of her right to due process and a fair hearing under the Fourteenth Amendment; declare that the state has violated plaintiffs' rights under 42 U.S.C. § 1983; that the state be permanently enjoined from terminating plaintiffs' Medicaid benefits; and, order that plaintiffs' reasonable attorney fees and costs be paid under 42 U.S.C. § 1988. Amended Comp., pp. 19–30; Comp. in Intervention, ¶¶ 23–27.

Shupe further contends that the actions of the Boulder County District Court collaterally estop the state from determining that Shupe's trust was a MQT(Comp. in Intervention, ¶ 29–30), and that the state, by failing to object to the Boulder proceed-

---

**3.** Unless otherwise distinguished in this Recommendation, "plaintiffs" includes Ramey, Farmer and plaintiff-intervenor Shupe.

ings, waived any right to object to the Shupe trust. *Id.* Shupe finally contends that the ALJ's decision was arbitrary and capricious and an error of law under §§ 24-4-106 and 26-1-106, COLO. REV. STAT. In addition to the remedies sought by Ramey and Farmer, Shupe asks that a permanent injunction enter to enjoin the state from terminating Shupe's HCBS–EBD (home care) services.

## II. Standard of Review

The purpose of summary judgment is to determine whether trial is necessary. *White v. York International Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. Statutory Framework

■ The Medicaid program was enacted in 1965, creating a cooperative federal/state program in which the federal government reimburses states for a portion of the cost of medical care for persons in need. Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396, et seq.; *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). The purpose of the program is to provide medical assistance to those whose re-

sources are insufficient to meet the costs of necessary medical care. *Atkins v. Rivera*, 477 U.S. 154, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986)(Medicaid benefits available to AFDC recipients).

■ Colorado has elected to participate in the Medicaid program through enactment of the Colorado Medical Assistance Act. COLO. REV. STAT. § 26-4-101, et seq. (1998). The accompanying regulations are set out in 10 C.C.R. § 8.00 et seq. While participation in the Medicaid program is optional, once a state elects to participate, it must comply with the federal statutory scheme and regulations promulgated by the Secretary of Health and Human Services. *Atkins*, 477 U.S. at 156–57, 106 S.Ct. 2456; *Dillon Family & Youth Services, Inc. v. Department of Human Services*, 965 F.2d 932, 933, n. 1 (10th Cir.1992). In order to receive federal monies under the optional federal/state program, states must comply with federal law and implementing regulations. States may not impose more restrictive requirements than those federally mandated. 42 U.S.C. § 1396a(r)(2).

Medicaid eligibility is determined by a needs-based analysis and coverage is denied if the applicant exceeds a ceiling in countable assets. Generally, funds in irrevocable trusts are not countable assets. The exception to that general rule was codified in the Social Security Act prior to the Act's amendment in 1993. Before its repeal in 1993, the exception provision at issue here read

> For purposes of this subsection, a "Medicaid qualifying trust" is a trust or similar legal devise, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

42 U.S.C. § 1396a(k)(2)

Subsection (3) provided

[t]his subsection shall apply without regard to—(A) whether or not the Medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or (b) whether or not the discretion described in paragraph (2) is actually exercised.

42 U.S.C. § 1396a(k)(3).

Thus, prior to amendment in 1993, an irrevocable trust established by an individual or her spouse was considered a Medicaid qualifying trust if the trustee could exercise any discretion in order to make payments from trust principal or income to the beneficiary.

On August 10, 1993, Congress amended the provision relating to irrevocable MQTs to provide:

> (I) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—
>
> (I) to or for the benefit of the individual, shall be considered income of the individual, and
>
> (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and
>
> (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c), and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

§ 42 U.S.C. § 1396p(d)(3)(B).[4]

The current irrevocable trust exceptions are contained in Section 1396p(d)(4), which include trusts established by relatives other than a spouse or by a non profit association with provisions providing that upon the death of the beneficiary, payment of any remaining trust corpus must be made to the state up to the amounts of Medicaid benefits paid if the state has provided Medicaid assistance. *See* 42 U.S.C. § 1396p(d)(4)(Pub.L.103–66, § 13611(e)(2)(C), 107 Stat. 627 (1993)). After the effective date of the amendment in 1993, if a disabled individual has assets in a supplemental needs trust ("SNT"), he may still retain Medicaid eligibility, if upon his death, the trust assets pass to the state up to the amount of Medicaid benefits paid.[5] When it amended the Act in 1993, Congress was silent on the status of trusts created before August 11, 1993. The 1993 amendment does not shed any light on the intentions of the earlier Congress.

## IV. Legal Analysis

### 1) whether an alleged improper denial of Medicaid benefits is actionable under 42 U.S.C. § 1983

If there is deprivation of a federal right by a state, 42 U.S.C. § 1983 provides a remedial cause of action unless the

---

4. The amendment provides that subsection (d) "shall apply without regard to—(i) the purposes for which a trust is established, (ii) whether the trustees have or exercise any discretion under the trust, (iii) any restrictions on when or whether distributions may be made from the trust, or (iv) any restrictions on the use of distributions from the trust." 42 U.S.C. § 1396p(d)(2)(C).

5. Under the 1993 amendment, section 1396p(d) shall not apply to a "[t]rust containing the assets of an individual under the age of 65 who is disabled...and which is established for the benefit of such individual...if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." 42 U.S.C. § 1396p(d)(4)(A).

state actor can demonstrate by means of an express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement. *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). A review of the statute indicates there is no provision that precludes the private enforcement sought by the plaintiffs here. Moreover, the Colorado Medicaid Plan as implemented under the Colorado Medical Assistance Act has been held to create rights which are enforceable under Section 1983. *Amisub(PSL) v. State of Colorado,* 879 F.2d 789, 793 (10th Cir.1989)(private right of action to challenge hospital reimbursement procedures under Medicaid Act, § 1396a(a)(13)(A)); see also *Yvonne L. v. New Mexico Dept of Human Services,* 959 F.2d 883, 886 (10th Cir.1992); and *Miller v. Ibarra,* 746 F.Supp. 19, 24–25 (D.Colo.1990). Accordingly, the court finds that plaintiffs may bring this action under Section 1983.

## 2) Should the State have applied repealed Section 1396a(k) to plaintiffs' trusts?

Plaintiffs argue that Section 1396a(k) was repealed without a savings clause and that since the amendments found at Section 1396p(d) expressly do not apply to trusts created before August 10, 1993, their trusts should not be considered countable assets. Defendant argues that

6. The regulation states

A. Trusts Established Before August 11, 1993

In the case of a Medicaid qualifying trust, as defined in 42 U.S.C. Sec. 1396a(k), the amount of the trust property that is considered available to the applicant/recipient who established the trust (or whose spouse established the trust) is the maximum amount that the trustee(s) is permitted under the trust to distribute to the individual assuming the full exercise of discretion by the trustee(s) for the distribution of the maximum amount to the applicant/recipient. This amount of property is deemed available resources to the individual whether or not it is actually received.

10 C.C.R. 2505–10 at § 8.110.52

the intent of Congress was not to make trusts created before August 10, 1993 exempt from calculation as allowable assets, but that the amendments only make trusts created after August 10, 1993 subject to a more stringent standard than those created before that date. Defendants argue that a savings clause has not been held to be necessary and that Congress could not possibly have intended that all trusts created before 1993 would be exempt from consideration as allowable assets.

The challenged state regulation is Section 8.110.52A,[6] which plaintiffs contend improperly applies a repealed federal statute to trusts created before August 10, 1993. The state relies upon the State Medicaid Manual § 3257 (November 1995), HCFA, HHS ("the Manual"), which provides that trusts established prior to August 10, 1993 will continue to be analyzed under the § 1396a(k) statutory scheme. The specific language of the Manual provides

Prior to October 1, 1993, existence of an MQT could result in Medicaid ineligibility by the State agency counting resources from the trust as described in SI 01730.048B.1 above. *This rule still applies to trusts established before August 11, 1993.* Waiver of this rule is possible where there has been a State determination of 'undue hardship'.

Program Operations Systems Manual ("POMS") DI SI 01730.048C.1P: Comp., Ex. M. (Emphasis added)[7]

7. Colorado argues that Section 1396a(k) continues to apply to trusts created prior to August 10, 1993, relying upon several state court decisions holding that a continuing Section 1396a(k) analysis after the section was repealed by the amendment is appropriate. In *Cook v. Department of Social Services,* 225 Mich.App. 318, 570 N.W.2d 684 (1997), a trust created by an individual or her spouse was found to be correctly analyzed under the former Section 1396a(k). In *Ronney v. Department of Social Services,* 210 Mich.App. 312, 532 N.W.2d 910 (1995), the court held that a Section 1396a(k) analysis applied after 1993 amendments to a revocable trust; and, in *Cohen v. Commissioner,* 423 Mass. 399, 668 N.E.2d 769 (1996), Section 1396a(k) was applied to trusts settled by individuals, a con-

The POMS contains the Social Security Administration's policy interpretations of federal regulations. While the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to persuasive authority. *St. Mary's Hospital v. Blue Cross & Blue Shield,* 788 F.2d 888, 890 (2nd Cir.1986)(addressing a former manual); *Davis v. Secretary of Health and Human Services,* 867 F.2d 336, 340 (6th Cir.1989).

The court finds that although Section 1396a(k) was expressly repealed by the 1993 amendments, the Manual or POMS, as a federal administrative interpretation of the Act, makes it clear that trusts created before August 10, 1993 are to be analyzed for purposes of Medicaid eligibility as they were before the amendment. Further, although Congress was silent concerning its intent with respect to trusts created before amendment of the Act in 1993, it is illogical to assume, as plaintiffs do, that Congress would have created an exemption from trust scrutiny for all trusts created before August 10, 1993, given the House Committee Comments in 1985 concerning the bill proposing the amendment at issue here. The Committee stated

> The Committee feels compelled to state the obvious. Medicaid is, and always has been, a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use Medicaid qualifying trusts and similar 'techniques' to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.

H.R.Rep. No. 365, 99th Congress, 1st Sess, pt. 1 at 72 (1985); *see also, Cohen,* 668 N.E.2d at 773.

Because of that expression of Congressional intent and the POMS' directions, the court finds that the 1993 Amendments were intended to further restrict the types of trusts that would be exempt as countable resources. The court thus finds that Colorado did not violate plaintiffs' rights under the Social Security Act when it analyzed plaintiff's trusts under the former Section 1396a(k).

### 3) Are plaintiffs' trusts Medicaid Qualifying Trusts rendering them ineligible for Medicaid benefits?

To determine an individual's eligibility for Medicaid, state plans are permitted to take into account only such resources as are actually available to the individual. 42 U.S.C. § 1396a(a)(17)(B). The amount in a trust fund established by an individual or her spouse to be considered an allowable resource was, under the now-repealed Section 1396a(k) the "maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." 42 U.S.C. § 1396a(k)(1).[8]

### The Ramey Trust

Donald Ramey created his daughter's trust in 1992 while her divorce was proceeding. The trust provides that Donald Ramey as trustee, is authorized to "pay to or apply for the benefit of the Beneficiary,

---

servator, a parent and a spouse. With the arguable exception of *Cohen,* the cases are inapplicable to the facts here.

8. Plaintiffs initially argue that, even after the 1993 amendments, persons under the age of 65 who are disabled are "favored" and that certain irrevocable trusts would not be considered as resources for purposes of Medicaid eligibility. Plaintiffs are incorrect. The statute provides that trusts established for dis-

abled persons under the age of 65 who are beneficiaries of trusts established by a parent, legal guardian, conservator or court shall not be a countable resource only "if the state will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual; under a State plan under this title..." See 42 U.S.C. 1396p(d)(4)(A).

for her lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in Trustee's sole discretion may from time to time deem necessary or advisable for the support, maintenance, health, education, comfort and welfare of the Beneficiary." Amended Comp. Ex. C., p. 1. The intent of the trust was that "no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits of any county, state, federal or governmental agency... [and] for purposes of determining Beneficiary's eligibility for such benefits, no part of the principal or income of the trust estate shall be considered available to the Beneficiary." *Id*, p. 2. Upon Ramey's death, the residue of the trust is to go to Ramey's ex-husband. *Id*, p. 3.

The trust was funded with $50.00 from Ramey's father. As part of Ramey's dissolution of marriage proceedings, a life estate to the marital home was to be added to the trust corpus. Eventually, when Ramey could no longer reside in the former marital home, title to the home was placed into the trust, and the trust estate was then augmented with the sale proceeds from the sale of the marital home in 1994.

The Ramey trust provides "The Trustee shall pay to or apply for the benefit of the Beneficiary, for her lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in Trustee's sole discretion may from time to time deem necessary for the support, maintenance, health education, comfort and welfare of the Beneficiary." Amended Comp., Ex. C., p. 1. Colorado argues that this is a discretionary trust and that Ramey's fa-

ther was acting on behalf of his daughter when he settled the trust.

The state's position is untenable because Section 1396(a)(k)(2) should not be construed to include trusts other than those to which it expressly or by clear implication extends. Section 1396(a)(k)(2) was created to correct a specific abuse, that of distributions from grantor trusts. The House Committee comment at the time was "The Committee does not intend that trusts established solely for the benefit of disabled children, from which the grantor or other individual can under the terms of the trust receive no benefit, be treated as Medicaid qualifying trusts." H.R.Rep. No. 99–265, 99th Congress, 1st Sess., at 72 (1985).

In *Sanders v. Pilley,* 684 So.2d 460 (La. App.1996), the court held that a disabled child's father was not a grantor standing in the shoes of his son, and that therefore, the trust funded with settlement proceeds from a sexual assault on the child at the institution formerly housing him was not a MQT because the father was not an individual or an individual's spouse within the meaning of the Section 1396a(k)(2) of the SSA.[9]

The circumstances in *Sanders* are close to those of the Ramey trust. Neither Ramey nor her spouse created a trust for Ramey's benefit with her own assets as contemplated by Section 1396a(k). Section 1396a(k) expressly applies to trusts established by an individual or her spouse. It does not extend to trusts settled by a parent or a court, or by any other person acting on behalf of an intended beneficiary. The assets placed into the trust occurred after Ramey's marriage had been dissolved. Ramey has no control over distri-

---

**9.** This Court has considered trusts created by the probate court for mentally incompetent patients and held that because the trusts gave the trustees full discretion to supplement other benefits and not to supplant Medicaid benefits, the trust income was not "available to the plaintiffs" and therefore, the trusts were not Medicaid qualifying trusts. *Miller v. Ibarra,* 746 F.Supp. 19, 27 (D.Colo.1990). And in *Seidenberg v. Weil,* 95–WY–2191–WD (D.Colo.1996)(attached to Brief in Support of Pls. Resp to Defs. Motion for Summary Judgment...), Judge Downes held that a testamentary trust established for the benefit of a developmentally disabled person was not a countable resource for purposes of Medicaid eligibility. The Seidenberg trust was a testamentary trust established by Seidenberg's father "to be used for the care, support, maintenance and education of my daughter." *See Seidenberg,* p.2.

butions from the trust, which are at the sole discretion of her father, the settlor and trustee. *See In re: Marriage of Jones,* 812 P.2d 1152 (Colo.1991)(in parent-settled trust, trust assets considered "expectancy" and not property for purposes of dividing marital property in dissolution proceeding).

The court thus finds that the Ramey trust is not a Medicaid qualifying trust. As a result, Ramey's rights under the Social Security Act were violated when the state decided the trust was a MQT and terminated Ramey's benefits.

### The Farmer Trust

Plaintiff Farmer created a trust for her own benefit on December 30, 1992 with $31,000 she received as an inheritance from her mother. She concedes that her trust is a MQT. *See,* Pls. Brief in Support of Pls. Resp. to Def. Motion for Summary Judgment..., p. 17. Notwithstanding, Farmer argues that hers is a special needs trust over which she has no control, and therefore, that the trust is a noncountable resource.

The pertinent portion of the Farmer trust instrument states: *"Expenditures for Special Needs.* The trustee shall pay to or apply for the benefit of Renee M. Farmer such sums out of the income or principal of this trust as the trustee, in the trustee's sole discretion, considers necessary or appropriate for said beneficiary's special needs." Amended Comp., Ex. H, p. 1. The trust provides that "[i]t is further my intention that no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits of any state or federal agency which has a legal responsibility to serve persons with disabilities which are the same or similar to the impairments of the beneficiary herein." *Id,* p. 2.

Farmer's sister is the trustee. The trust further provides that in the event the trust assets are to be considered assets which would render Farmer ineligible to receive governmental assistance benefits, the trust is to be terminated and the assets distributed to Ms. Farmer's sister, who would then provide for Ms. Farmer's special needs. *Id.* Upon the trust's termination, the proceeds are to be disbursed to Farmer's sister *(Id),* and upon Farmer's death, the assets are distributed to other named individuals. Id, p. 3.

The Farmer trust presents the question of whether à self-settled special needs trust is a resource available to Farmer. Farmer contends that her trust should not be found to be a countable resource under *Miller v. Ibarra,* 746 F.Supp. 19, 34 (D.Colo.1990). In *Miller,* Judge Carrigan found that trusts established by the courts under the Colorado Probate Code for incompetent persons, in which the only funds to be made available to the beneficiary were not more than $20.00 less than the Medicaid income eligibility level, were not MQTs and even if they were, the sums available were insufficient to render the beneficiaries ineligible for Medicaid. *See Miller,* 746 F.Supp. at 34.

Farmer admits her trust is a MQT, presumably because it is self settled trust, as expressly addressed in Section 1396a(k). She contends that her trust may be used only for "good health, safety and welfare," and is thus a special needs trust,[10] as opposed to a support trust providing for basic needs, such as food, clothing, and rent.

■ The court finds that *Miller* is inapplicable here because Farmer created the trust for herself. The trust further does not have the *Miller* fixed amount distribution limitation; rather, it states its purpose is to provide for Farmer's "good health, safety and welfare." Farmer argues that language makes the trust a special needs trust exempt from calculation as an resource under 20 C.F.R. § 416.1201(a).

---

10. Some state courts have held that a special needs trust settled by a person other than the beneficiary is not a countable resource. *See, In Matter of Leona Carlisle Trust,* 498 N.W.2d 260 (Minn.App.1993); *In the Matter of Moretti,* 159 Misc.2d 654, 606 N.Y.S.2d 543 (N.Y. 1993); *Sanders, supra.*

The court disagrees. Although Farmer does not "own" the trust assets, and although the trust could be considered as special needs trust, any amount can be made payable to Farmer in the trustee's discretion for the needs stated, and it is clear that Farmer created the trust for the purpose of preventing the inheritance from her mother from being considered an available resource. The court finds that the Farmer trust is a MQT and that as a self settled trust, its assets were properly counted as resources available to Farmer for the purpose of denying her medicaid eligibility under a Section 1396a(k) analysis.

### The Shupe Trust

The settlor of the Shupe trust is Richard McLean, District Court Judge of the Boulder District Court (Comp. in Intervention, Ex. A, pp. 1, 13); the Center for people with disabilities in Boulder is listed as the trustee with Shupe as the beneficiary. *Id,* p. 1. The trustee has sole discretion to pay benefits to Shupe for her special needs, which are not provided by any governmental agency and which are defined as follows:

> 'Special needs' shall include but not be limited to: (1) the differential cost between a private or public room in an institution or in group housing; (2) medical and dental expenses and insurance therefore, including sophisticated medical and dental diagnostic work and treatment not available through other funding sources, plastic surgery and other 'non-necessary' medical procedures; (3) clothing and equipment, including an electric wheelchair or a mechanical bed, telephone or television service and hair care; (4) travel and entertainment, including the cost of companions for travel, reading and cultural experiences, writing materials, hobby equipment, transportation, annual vacations and reasonable transportation expenses of out-of-state relatives to visit the beneficiary; (5) programs of training, education and treatment, including supplementary education and private

rehabilitative training; and (6) essential dietary needs.

*Id.* p. 2.

The trust was created for "extra and supplemental care, maintenance, support and education" expressly in addition to any benefits for which Shupe might be eligible through governmental agencies. *Id.,* pp. 2–3. If the existence of the trust is found to render Shupe ineligible for any program of public benefits, then it is to be terminated at the discretion of the trustee and the balance of the trust estate distributed to Shupe or to her conservator or legally authorized agent. *Id,* p. 5. Upon Shupe's death, the balance of the trust estate is to go to her surviving issue or if none, to her heirs at law. *Id,* p. 6. The Shupe trust reads "[t]he Trustee shall pay to or apply for the benefit of Sherry S. Shupe for Beneficiary's lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee, in its sole discretion, may from time to time deem necessary or advisable for the satisfaction of Beneficiary's special needs..." Comp. in Intervention, Ex. A, pp. 1–2. The trustee admits it has no discretion to use trust money for Shupe's basic needs as defined under Social Security regulations as food, clothing and shelter, but that the trust may only be used for special needs. See Hildebrand affidavit, Shupe Resp. to State's Motion for Summary Judgment..., Ex. B.

The Shupe trust is a special needs trust established by a court. There is no dispute that Shupe is a protected person. The Shupe trust was settled in conjunction with her dissolution of marriage proceedings. It was funded with Shupe's share of the proceeds from the sale of the former marital home. In addition, under the terms of the trust, and the dissolution of marriage separation agreement, Shupe's spouse was to pay $50 per month into the trust as maintenance.

Shupe argues her supplemental needs trust is not a MQT because it was not established by her or her spouse, but by

the court on the recommendation of the guardian ad litem who had been appointed to represent Shupe, who had been declared incompetent under Colorado law. Under Colorado law a beneficiary of a discretionary trust does not have a property interest in the undistributed funds and cannot compel the trustee to distribute funds to the beneficiary. *See In re the Marriage of Rosenblum,* 43 Colo.App. 144, 602 P.2d 892 (1979).

The language of the Shupe trust is clearly that of a supplemental or special needs trust. The Shupe trust further gives the trustee complete discretion to pay benefits to Shupe. The court agrees with the reasoning of *Hecker v. Stark County Social Service Board,* 527 N.W.2d 226 (N.D.1994). There, when a discretionary trust with language nearly identical to that of the Shupe trust, was established by the mother of a developmentally disabled adult male, the court found it not to be a Medicaid qualifying trust, reasoning as follows:

> Special needs trusts and supplemental needs trusts are recognized as means for individuals to provide for persons who do not have the ability to be self-supporting and to whom the individuals owe no duty of support. Both supplemental needs trusts and special needs trusts require that public assistance be used for the primary support of the beneficiary with the trustees to provide only for the beneficiary's particular 'special' or additional needs that public assistance does not provide. The majority of jurisdictions facing this issue holds [sic] that these types of trusts do not disqualify a beneficiary from receiving public assistance if the settlor's intention is clear that trust distributions are only to supplement, and not supplant, public assistance benefits.

*Hecker v. Stark County Social Service Board,* 527 N.W.2d 226, 230 N.D. (1994)(internal citations omitted); *see similarly, In Matter of the Leona Carlisle Trust,* 498

N.W.2d 260 (Minn.App.1993); *In Matter of Mills v. Durst,* 156 Misc.2d 676, 594 N.Y.S.2d 537 (N.Y.1993); *In Matter of Moretti,* 159 Misc.2d 654, 606 N.Y.S.2d 543 (N.Y.Sup.1993); and *Kegel v. State,* 113 N.M. 646, 830 P.2d 563, 566 (1992).

*Miller* is also instructive on this issue. Although each trust must be considered on a case by case basis, this federal court has determined that the identity of the settlor, the intent of the settlor and the language of the trust govern. *See also Seidenberg.* In *Miller,* the court evaluated the persons who "established" the trusts at issue. Judge Carrigan found that trusts established by the courts for several people determined to be incompetent under the probate code, including a person who was completely disabled as a result of multiple sclerosis, were not trusts established by an individual or her spouse and therefore not Medicaid qualifying trusts. *See also, Sanders v. Pilley,* 684 So.2d 460.

The court established Shupe trust gives full discretion to the trustee to distribute trust amounts for special or supplemental needs; it expressly states it is for supplemental needs in addition to any benefits provided by any governmental agency. Shupe is not competent and cannot revoke the trust and use the principal for her own benefit. Thus the Shupe trust is not a MQT and Colorado violated Shupe's rights under the Social Security Act when her benefits were terminated.[11]

### 4) Are Ramey and Shupe categorically eligible for Medicaid benefits?

Colorado participates in Medicaid through the Colorado Medical Assistance Act, at §§ 26–4–101, et seq. (1998). Colorado is an "SSI" state, also known as a "categorically eligible state". In administering its Medicaid program, Colorado must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent

---

11. Because the Court has found that the Shupe trust is not a MQT, it will not address another of Shupe's arguments, that the State failed to determine whether application of the MQT statue should have been waived due to hardship.

of, medical assistance under the program. *See* 42 U.S.C. § 1396a(a)(17). Those standards must take into account "only such income and resources [12] as are, determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient who would except for income and resources, be eligible for aid or assistance..." 42 U.S.C. S 1396a(a)(17)(B). Under administrative guidelines, a trust may or may not be a resource for SSI purposes. *See* Comp., Ex. M: POMS 01120.200A. The Manual explicitly states that "If an individual does not have the legal authority to revoke the trust or direct the use of trust assets for his/her own support and maintenance, the trust principal **is not** the individual's resource for SSI purposes." *Id,* POMS 01120.200 D. 2.(emphasis in original).

If the Social Security Administration has determined a person eligible for SSI benefits, it is because under the SSA's methodology, it has determined that the person has less than $2000 in countable resources. 42 U.S.C. § 1396a(a)(10)(A)(i)(II). Colorado agrees that the resource limit is $2000.

*See* 9 C.C.R. 2503–1, § 3.220.11. Congress has defined "available income" in 42 U.S.C. § 1396a(a)(17). The section states that a state plan may set reasonable standards to determine an individual's resources and available income except for those persons who are receiving SSI benefits.[13]

Colorado argues that federal regulations allow the states to make reasonable standards for determining eligibility, and that the Manual (*see* Comp., Ex. M, POMS DI SI 01730.048C.1) provides that individuals who are eligible for SSI benefits may not be eligible for Medicaid based on the trust and transfer of trust provisions the states are required to follow. Thus, Colorado argues that even if the legislature has presumptively stated that all SSI recipients are categorically eligible for Medicaid, the Manual also provides that trusts may be evaluated in determining an individual's resources. Colorado concludes that it may thus find a person ineligible for Medicaid even if the person is receiving SSI benefits.

Ramey and Shupe maintain that because they receive SSI benefits, they are cate-

---

**12.** "Resources" for SSI purposes are defined as "(a) cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash. To be used for his or her support and maintenance...(1) if the individual has the right, authority or power to liquidate the property...it is considered a resource." 20 C.F.R. § 416.1201(a) (1994). Under Colorado's regulations, "[r]esources and income shall be considered available both when actually available and when the applicant or recipients [sic] has a legal interest in a sum (includes cash or equity value of a resource) and has the legal ability to make such a sum available for support and maintenance." 9 C.C.R. 2503–1, § 3.200.21.

**13.** The Section states

(17) *except as provided in subsections* (*l*)(3), (m)(3), and (m)(4) of this section, include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan *who are not receiving aid or assistance* under any plan of the State approved under subchap-

ter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, and with respect to whom *supplemental security income benefits are not being paid* under subchapter XVI of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter) as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits, (C) provide for reasonable evaluation of any such income or resources...

42 U.S.C. § 1396a(17)(emphasis added).

gorically eligible for Medicaid benefits and that the methodology used to count their resources must be no more restrictive than as provided in the Social Security Act under 42 U.S.C. § 1396a(a)(10)(A)(i)(I) and (II), relying in part, upon *Seidenberg v. Weil,* slip op. at p. 5 (D.Colo.1996)(J. Downes).

It is undisputed that Ramey and Shupe are SSI recipients. In addition, Shupe has been found eligible for home based services.[14] To be found eligible for home services, the individual must be found eligible for Medicaid even though not a resident of a nursing care facility or a hospital. 10 C.C.R. 2505–10, Manual § 8.485.50E. Additionally, under Colorado statute, if a person receives SSI benefits she is "categorically eligible for Medicaid" whether she is institutionalized or is receiving home care. *See* §§ 26–4–201(1)(i) and 26–4–302(1)(c), COLO. REV. STAT. (1998); 10 C.C.R. 2505–10, § 8.110.12 (1988).

■ Under the express language of federal and state statutes, a "categorically needy" state plan may include a "reasonable standards" methodology to count resources except for those persons receiving SSI benefits. Those SSI recipients are automatically eligible for Medicaid under both federal and state law. *See,* 42 U.S.C. § 1396a(a)(10)(A)(I) and (II); *Atkins v. Massachusetts Dept. of Public Welfare,* 477 U.S. 154, 157, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986)(categorical eligibility rule announced in AFDC cases).

The state's argument therefore is rejected. The court finds that if the Secretary evaluated Ramey and Shupe and their trusts and found them to have resources under $2000 and thereby eligible for SSI benefits, the state deprives them of their right to Medicaid benefits when it imposes a more restrictive standard finding that the trusts render them ineligible for benefits. The court finds that such methodology requires Ramey and Shupe to spend their SSI benefits, which are provided for basic necessities, on medical expenses, a result not intended by *Atkins*.[15] Ramey and Shupe are categorically eligible for Medicaid benefits.

### 5) Is the State Manual preempted?

■ Congressional power to preempt state law arises from the Supremacy Clause, which provides that "the Laws of the United States...shall be the supreme Law of the Land...any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Article VI, cl. 2. Congressional intent is paramount in preemption analysis. *See Mount Olivet Cemetery Association v. Salt Lake City,* 164 F.3d 480, 486 (10th Cir.1998). Preemption may occur in three situations: (1) express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law; (2) field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it; and (3) conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the

---

**14.** These are defined as "services provided in a home or community setting to individuals who are eligible for Medicaid reimbursement for long term care who would require nursing facility care without the provisions of HCBS–EBD." 10 C.C.R. 2505–10, Manual § 8.485.50L; *See also* 42 U.S.C. § 1396n(c)(1).

**15.** As the Court stated, categorically needy individuals were

'especially deserving of public assistance' for medical expenses because one is eligible for AFDC or SSI only if, in a given month, he or she earns less than what has been determined to be required for the basic necessities of life. AFDC and SSI assistance are intended to cover these basic necessities but not medical expenses. Thus, if a person in this category also incurs medical expenses during that month, payment of those expenses would consume funds required for basic necessities.

*Atkins,* 477 U.S. at 157, 106 S.Ct. 2456(internal citations omitted).

full purposes and objectives of Congress. *United States v. City and County of Denver*, 100 F.3d 1509, 1512 (10th Cir.1996).

Colorado argues that the preemption doctrine does not apply because Section 8.110.52 is in compliance with 42 U.S.C. § 1396a(17)(B) and 42 U.S.C. § 1396c(A)(2). Plaintiffs claim inconsistency and that the federal statutes preempt any state law to the contrary. Comp. §§ 55–56. Plaintiffs appear to argue that the state regulation presents an obstacle to the accomplishment of congressional objectives. As such, a conflict preemption analysis applies.

As discussed previously in this recommendation, the regulation at issue states

A. Trusts Established Before August 11, 1993

In the case of a Medicaid qualifying trust, as defined in 42 U.S.C. Sec. 1396a(k), the amount of the trust property that is considered available to the applicant/recipient who established the trust (or whose spouse established the trust) is the maximum amount that the trustee(s) is permitted under the trust to distribute to the individual assuming the full exercise of discretion by the trustee(s) for the distribution of the maximum amount to the applicant/recipient. This amount of property is deemed available resources to the individual whether or not it is actually received.

10 C.C.R. 2505–10 at § 8.110.52.

Plaintiffs raised the same argument in their claim of "repealed law." The court finds that Section 8.110.52 is not preempted by 42 U.S.C. §§ 1396a(17)(b) and c(A)(2). The state may properly apply the regulation to trusts established before August 11, 1993 under the analysis set forth in Section IV, (1) of this Recommendation.

**6) Was Farmer's eligibility for Medicaid benefits determined under the wrong standard?**

Farmer contends that when she learned that Larimer County intended to begin using the trust to disqualify Farmer for Medicaid benefits, trustee Geraldine Chandler terminated the trust and deposited the funds in an account in her name for the ultimate benefit of Jennifer Farmer. Pls. Resp to State's Motion for Summary Judgment...., Ex. Q, ¶¶ 8–9. Farmer argues that even if her trust is a countable asset and a MQT, her eligibility nonetheless should have been reviewed in accordance with the transfer of resources provisions in § 1396p(c)(1)(E)(i)(I), and the state should have determined her to be ineligible for only a period of time as required by Section 1396p(c)(1)(E)(i)(I) and not completely ineligible. Amended Comp. ¶ 33.

The federal limitation on transfers of assets with regard to Medicaid benefits was to prevent the wealthy from disposing of assets to become eligible for Medicaid. State plans must provide for a period of ineligibility beginning with the date an individual disposes of resources for less than fair market value for thirty months or the value of the resources divided by the average state cost of providing services to the individual. *See* 42 U.S.C. § 1396p(c)(1)(A) and (E)(i). The Colorado regulation provides that the resource must be counted if transferred without fair consideration while the individual is receiving public assistance for the purpose of establishing or retaining eligibility for financial assistance. The Colorado regulation provides:

[a]n individual who disposes of resources at less than fair market value any time within 36 months immediately prior to filing of an application for assistance, or makes such a transfer while receiving assistance, may be ineligible for public assistance. In regard to an applicant or recipient, such a transaction is considered as a transfer of resources without fair consideration and is a factor of eligibility if the transfer, assignment, or sale of a resource was:

a. voluntary,

b. without fair and valuable consideration, and

c. for the purpose of rendering such applicant or recipient eligible for assistance. The county shall make a rebuttable presumption that the transaction was for such purpose when the transfer was made any time during the 36 month period immediately prior to the filing of application for assistance or during such time that assistance was being received. 9 C.C.R. § 3.210.31 (1996). Colorado considers a transfer without fair consideration as "a property transaction in which the proceeds of the transfer, assignment, or sale are less than the value of the resource." 9 C.C.R. § 3.210.41.

Colorado regulations also provide a method of determining the period of ineligibility. They state:

When an applicant or recipient transfers assets without fair consideration, the county department shall determine the number of months of ineligibility. (This rule is not applicable to the AFDC program).
A. Determine the actual value less encumbrances;
B. Determine the current standard of assistance for the applicable program;
C. Add any monthly medical costs, including health insurance premiums that the individual is responsible to pay;
D. Divide the transfer without consideration by the standard of assistance (plus any monthly medical costs) and drop any decimal places from the result;
E. This equals the number of months of eligibility...

9 C.C.R. § 3.210.46 (1995).

Federal statutes provide exceptions to the period of ineligibility prompted by a transfer for less than market value. § 42 U.S.C. § 1396p(c)(2)(C) provides that: "[a]n individual shall not be ineligible for medical assistance by reason of [disposing of resources for less than fair market value] to the extent that—a satisfactory showing is made to the State (in accordance with any regulations promulgated by the Secretary) that (i) the individual intended to dispose of the resources either at fair market value, or for other valuable consideration, or (ii) the resources were transferred exclusively for a purpose other than to qualify for medical assistance."

The Farmer trust's trustee terminated the trust and disposed of its assets as she was required under paragraph 2.g of the trust document. As such, she argues that the transfer of those assets would have to be calculated under 42 U.S.C. § 1396p(c)(1)(E)(i)(I). See Towey deposition, Pls. Brief in Response to Def. Motion for Summary Judgment, Ex. D. The state responds that Section 1396p(c)(1)(E)(i)(I) is not applicable because Farmer had resources in excess of the $2000 limit at the time her case was reviewed in November 1997, before the trust was terminated.

■ The court finds that there are genuine issues of material fact as to Farmer's and the trustee's intent, the methodology and calculations employed, and the extent of the assets in the Farmer trust at the time of termination, making disposition of the issue on summary judgment inappropriate.

### 7) Do res judicata and collateral estoppel bar relitigation of the Shupe trust?

■ The doctrine of collateral estoppel may be applied to the government as long as the issue is actually and necessarily litigated by a court of competent jurisdiction and the requirement of mutuality of the parties is met. *See United States v. Mendoza*, 464 U.S. 154, 162, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

Shupe argues the state is collaterally estopped from "relitigating" issues surrounding the Shupe trust. She contends that the state was notified but failed to appear at the hearing in the Boulder County District Court which established Shupe's supplemental needs trust. Shupe contends that the Boulder District Court determined that her trust was not a MQT, and that as a result, she would not lose her Medicaid eligibility.

The state argues that the Shupe trust is a MQT in reliance upon Section 8.110.52A. of the State Medicaid Manual. 10 C.C.R. 2505–10, § 8.110.52A. The state further argues that it is not collaterally estopped from litigating the issue of whether the Shupe trust is a MQT because the Boulder court did not have the ability to make the determination as to whether the trust was a MQT.

Although plaintiffs contend that the Boulder court's determination bars relitigation of the issue, the court finds that the Boulder County District Judge did not make a determination as to whether the Shupe trust was a Medicaid qualifying trust. He simply stated his intent, which was to preclude any assets recovered from the marital estate from rendering Shupe ineligible for Medicaid. Complaint in Intervention, Ex. B, p. 1.

Under the terms of the federal and state contract, the state, through the Department of Health Care Policy and Financing, retains the right to determine eligibility as long as its methodology is no more restrictive than that provided by the Social Security Act and its regulations. Intervenor's Cross–Motion for Summary Judgment, Ex. A., p. 2, ¶ A; 42 U.S.C. § 1396a(r)(2)(A) and (B).

■ The procedure to apply for Medicaid is set forth in the Colorado Medical Assistance Act, COLO.REV.STAT. §§ 26–4–101, et seq. (1998) Application is made with the county department pursuant to § 26–4–402(1)(a)(11) before an administrative law unde r § 24–4–105, followed by judicial review under § 24–4–106, COLO. REV.STAT. (1998). Nothing in the Colorado Medical Assistance Act empowers the Boulder District Court to determine whether a trust is a MQT and whether an applicant is otherwise eligible for Medicaid.

Accordingly, the court finds that the Boulder Court Order establishing the Shupe trust does not collaterally estop the state from determining whether the Shupe trust is a MQT, and that principles of res judicata and collateral estoppel do not apply.

**8) Was the ALJ decision upholding termination of plaintiffs' Medicaid benefits arbitrary and capricious, an error of law, or violative of plaintiffs' Fourteenth Amendment rights to a fair hearing?**

Shupe argues that the ALJ's decision finding Shupe's trust to be a MQT was erroneous as a matter of law and arbitrary capricious. Shupe argues that ALJ ignored the facts and circumstances of the Shupe trust and Colorado probate law concerning discretionary trusts. In particular Shupe argues that the ALJ improperly found the trust to be a MQT based on out of state law. Shupe finally contends that the state's hearing procedures do not permit a state ALJ to decide questions of constitutional law, depriving plaintiffs of their due process rights. The state responds that the ALJ decision was solidly based in federal and state law and that it was appropriate for the ALJ to look outside of Colorado for law because there was none in the state.

■ The dispute is over whether one or more administrative law judge's decisions finding the trusts at issue to be MQTs were not in compliance with the federal statute and regulations. A state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency. *Turner v. Perales,* 869 F.2d 140, 141–42 (2d Cir.1989) (distinguishing *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), in which the Supreme Court held that (the federal agency set up to implement the federal law was entitled to deference so long as its interpretation was not arbitrary or capricious or manifestly contrary to law.) *See Amisub(PSL),* 959 F.2d at 795.

Here, the state was obligated to evaluate the trusts at issue under a methodology no more restrictive than that required by the

Secretary when making determinations with regard to SSI benefits. The court has determined that the methodology used to find the Ramey and Shupe trusts to be MQTs was not in compliance with federal law. However, because the court has not been provided the administrative law judges' decisions [16] with regard to any of the trusts, the record is insufficient to make a determination on summary judgment as to whether the decisions were in compliance with federal law, were otherwise arbitrary and capricious or whether plaintiffs' due process rights to a hearing were violated. Accordingly, the cross motions for summary judgment on these issues should be denied.

## IV. RECOMMENDATION

For the reasons stated herein, it is hereby

**RECOMMENDED** that Defendant's Motion for Summary Judgment [filed August 28, 1998] and Defendant's Motion for Summary Judgment [filed October 20, 1998] be **granted in part and denied in part;**

that Plaintiff's Cross–Motion for Partial Summary Judgment [filed September 30, 1998] be **granted in part and denied in part;**

that Plaintiff–Intervenor's Cross Motion for Summary Judgment [filed November 19, 1998] be **granted in part and denied in part** as follows:

It is **RECOMMENDED** that declaratory judgment enter for plaintiffs and against defendant on plaintiffs' second (categorical eligibility) and fifth (availability of § 1983 action) claims for relief as stated in their complaint. It is further

**RECOMMENDED** that plaintiffs' first (repealed law) and fourth (preemption) claims for relief as stated in their complaint be **dismissed** and that judgment enter for defendants and against plaintiffs on plaintiffs' first and fourth claims for relief. It is further

**RECOMMENDED** that intervenor's fifth claim for relief (estoppel and waiver) be **dismissed** and that judgment enter for defendant on that claim. It is further

**RECOMMENDED** that plaintiff's motion for summary judgment on Farmer's claim of improper assessment under § 1396p(e)(1)(E)(i)(I) (plaintiffs' third claim for relief) be denied because of the existence of genuine issues of material fact. It is further

**RECOMMENDED** that the state's and Shupe's cross motions for summary judgment on the issues of whether the administrative law judges' decisions were arbitrary and capricious or otherwise violated plaintiff's due process rights (plaintiffs' sixth claim for relief) be **denied** due to the insufficient record before the court. It is further

**RECOMMENDED** that **declaratory judgment** enter finding (1) that plaintiffs may bring an action under 42 U.S.C. § 1983 for termination of Medicaid benefits; (2) that the state methodology for evaluating trust assets for plaintiffs Ramey and Shupe is more restrictive than mandated by the Social Security Act; (3) that, as recipients of SSI benefits Ramey and Shupe are categorically eligible for Medicaid benefits; (4) that the state correctly found plaintiff Farmer's trust to be a countable resource; (5) that plaintiffs Ramey and Shupe be reimbursed for Medicaid benefits wrongfully terminated: (6) that plaintiffs Ramey and Shupe be awarded their reasonalbe costs and Attorney fees incurred in bringing successful claims as permitted under 42 U.S.C. § 1988. It is further

Recommended that a **permanent injunction** enter against the defendant prohibiting him form determining that certain trusts established before August 11, 19943 are countable resources rendering beneficiaries ineligible for Medicaid benefits as set forth in the recommendation and that

---

**16.** The only decision submitted in the pleadings was the Final Agency Decision concerning ALJ Moeller's determination that the Farmer trust was correctly found to be a MQT. *See,* Comp., Ex. L.

Shupe's home care services not be terminated or reinstated of terminated.

Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings, and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings of specified recommendation toe which objection is made. The district court judge may accept, reject or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgement of the district court based on the findings and recommendation of the magistrate judge.

June 1, 1999.

## RECOMMENDATION OF MAGISTRATE JUDGE

### I. Background

Plaintiffs and Intervenor are all victims of multiple sclerosis. They are the beneficiaries of trusts which defendant determined rendered them ineligible for Medicaid benefits.

A Special Order of Reference under 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R.Civ.P. 72(a) and (b) referred dispositive motions to the undersigned magistrate judge on November 18, 1998 to issue recommendations regarding disposition. On June 1, 1999, the magistrate judge recommended that Defendant's Motion for Summary Judgment [filed August 28, 1998] and Defendant's Motion for Summary Judgment [filed October 20, 1998] be granted in part and denied in part; that Plaintiff's Cross–Motion for Partial Summary Judgment [filed September 30, 1998] be granted in part and denied in part;

that Plaintiff–Intervenor's Cross Motion for Summary Judgment [filed November 19, 1998] be granted in part and denied in part; that declaratory judgment enter for plaintiffs and against defendant on plaintiffs' second (categorical eligibility) and fifth (availability of § 1983 action) claims for relief as stated in their complaint; that plaintiffs' first (repealed law) and fourth (preemption) claims for relief as stated in their complaint be dismissed and that judgment enter for defendants and against plaintiffs on plaintiffs' first and fourth claims for relief; that intervenor's fifth claim for relief (estoppel and waiver) be dismissed and that judgment enter for defendant on that claim; that plaintiff's motion for summary judgment on Farmer's claim of improper assessment under § 1396p(e)(1)(E)(i)(I) (plaintiffs' third claim for relief) be denied because of the existence of genuine issues of material fact; that the state's and Shupe's cross motions for summary judgment on the issues of whether the administrative law judges' decisions were arbitrary and capricious or otherwise violated plaintiff's due process rights (plaintiffs' sixth claim for relief) be denied due to the insufficient record before the court; that declaratory judgment enter finding (1) that plaintiffs may bring an action under 42 U.S.C. § 1983 for termination of Medicaid benefits; (2) that the state methodology for evaluating trust assets for plaintiffs Ramey and Shupe is more restrictive than mandated by the Social Security Act; (3) that, as recipients of SSI benefits Ramey and Shupe are categorically eligible for Medicaid benefits; (4) that the state correctly found plaintiff Farmer's trust to be a countable resource; (5) that plaintiffs Ramey and Shupe be reimbursed for Medicaid benefits wrongfully terminated; (6) that plaintiffs Ramey and Shupe be awarded their reasonable costs and attorney fees incurred in bringing successful claims as permitted under 42 U.S.C. § 1988; that a permanent injunction enter against the defendant prohibiting him from determining that certain trusts established before Au-

gust 11, 1993 are countable resources rendering beneficiaries ineligible for Medicaid benefits as set forth in the recommendation and that Shupe's home care services not be terminated or reinstated if terminated. Objections to the recommendation were filed and a ruling from the district judge is pending.

On February 24, 1999, the parties' Stipulation to Certify Class Pursuant to Rule 23, F.R. C.P. [filed February 19, 1999] was granted. The class was defined as

> Any applicant for or recipient of Colorado Medicaid benefits who
>
> (a) would have otherwise qualified for Medicaid benefits since August 11, 1992, but for the Defendant's application of the Medicaid Qualifying Trust regulations found at Section 8.110.52A of Defendant's Medical Assistance Staff Manual Volume 8 and who was denied or terminated Medicaid benefits because of said regulations or
>
> (b) who, since June 30, 1994 was a recipient of Supplemental Security Income benefits and who was the beneficiary of a trust which the Social Security Administration has or would determine to not disqualify said recipient from Supplemental Social Security Income benefits and who would have been found eligible for Medicaid benefits but for the Defendant's application of the Medicaid Qualifying Trust regulations found at Section 8.110.52.A of Defendant's Medical Assistance Staff Manual Volume 8 and who has been denied or terminated from Medicaid benefits or who would be denied or terminated from such benefits in the future based on the application of the Medicaid Qualifying Trust regulations.

The class was certified in accordance with Rules 23(a) and (b)(2), Fed.R.Civ.P. Plaintiffs and Plaintiff/Intervenor were certified as representatives of the class members. *See* Order of February 22, 1999, entered February 24, 1999.

The matters currently before this court are the class's Motion for Summary Judgment on Class Claims [filed May 13, 1999]; Defendant's Motion for Summary Judgment on Amended Complaint [filed May 17, 1999]; and, the parties' Stipulation Re Order of Reference and Re Conduct of Class Action [filed June 17, 1999]. According to the parties' Stipulation, additional briefing on the above referenced motions is not necessary and the court may rely upon the briefs, affidavits and supporting documents previously filed in connection with the motions which were the subjects of the June 1, 1999 Recommendation. The court has determined that oral argument would not aid the recommendation.

## II. Standard of Review

The purpose of summary judgment is to determine whether trial is necessary. *White v. York International Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. Statutory Framework

The Medicaid program was enacted in 1965, creating a cooperative federal/state program in which the federal government reimburses states for a portion of the cost of medical care for persons in need. Title

XIX of the Social Security Act of 1965, 42 U.S.C. § 1396, et seq.; *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). The purpose of the program is to provide medical assistance to those whose resources are insufficient to meet the costs of necessary medical care. *Atkins v. Rivera*, 477 U.S. 154, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986)(Medicaid benefits available to AFDC recipients).

Colorado has elected to participate in the Medicaid program through enactment of the Colorado Medical Assistance Act. COLO. REV. STAT. § 26–4–101, et seq. (1998). The accompanying regulations are set out in 10 C.C.R. § 8.00 et seq. While participation in the Medicaid program is optional, once a state elects to participate, it must comply with the federal statutory scheme and regulations promulgated by the Secretary of Health and Human Services. *Atkins*, 477 U.S. at 156–57, 106 S.Ct. 2456; *Dillon Family & Youth Services, Inc. v. Department of Human* Services, 965 F.2d 932, 933, n. 1. (10th Cir. 1992). In order to receive federal monies under the optional federal/state program, states must comply with federal law and implementing regulations. States may not impose more restrictive requirements than those federally mandated. 42 U.S.C. § 1396a(r)(2).

Medicaid eligibility is determined by a needs-based analysis and coverage is denied if the applicant exceeds a ceiling in countable assets. Generally, funds in irrevocable trusts are not countable assets. The exception to that general rule was codified in the Social Security Act prior to the Act's amendment in 1993. Before its repeal in 1993, the exception provision at issue here read

> For purposes of this subsection, a "Medicaid qualifying trust" is a trust or similar legal devise, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with

respect to the distribution to the individual.

42 U.S.C. § 1396a(k)(2)

> Subsection (3) provided
>
> [t]his subsection shall apply without regard to-(A) whether or not the Medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or (b) whether or not the discretion described in paragraph (2) is actually exercised.

42 U.S.C. § 1396a(k)(3).

Thus, prior to amendment in 1993, an irrevocable trust established by an individual or her spouse was considered a Medicaid qualifying trust if the trustee could exercise any discretion in order to make payments from trust principal or income to the beneficiary.

On August 10, 1993, Congress amended the provision relating to irrevocable MQTs to provide:

> (I) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—
>
> (I) to or for the benefit of the individual, shall be considered income of the individual, and
>
> (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and
>
> (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c), and the value of the trust shall be determined for purposes of such subsection by including the amount of any

payments made from such portion of the trust after such date.

§ 42 U.S.C. § 1396p(d)(3)(B).[1]

The current irrevocable trust exceptions are contained in Section 1396p(d)(4), which include trusts established by relatives other than a spouse or by a non profit association with provisions providing that upon the death of the beneficiary, payment of any remaining trust corpus must be made to the state up to the amounts of Medicaid benefits paid if the state has provided Medicaid assistance. *See* 42 U.S.C. § 1936p(d)(4)(Pub.L.103–66, § 13611(e)(2)(C), 107 Stat. 627 (1993)). After the effective date of the amendment in 1993, if a disabled individual has assets in a supplemental needs trust ("SNT"), he may still retain Medicaid eligibility, if upon his death, the trust assets pass to the state up to the amount of Medicaid benefits paid.[2] When it amended the Act in 1993, Congress was silent on the status of trusts created before August 11, 1993. The 1993 amendment does not shed any light on the intentions of the earlier Congress.

## IV. Legal Analysis

### 1) whether an alleged improper denial of Medicaid benefits is actionable under 42 U.S.C. § 1983

The class moves for summary judgment raising the same arguments presented in

plaintiffs' and plaintiff/intervenor's briefs in connection with the previous dispositive motions. For the reasons set forth in IV. (1) of the June 1, 1999 Recommendation, the class may bring this action under Section 1983.

### 2) Should the State have applied repealed Section 1396a(k) to the class's trusts?

Subclass (a) of the class argues that Section 1396a(k) was repealed without a savings clause and that since the amendments found at Section 1396p(d) expressly do not apply to trusts created before August 10, 1993, their trusts should not be considered countable assets. For the reasons set forth in Section IV. (2) of the June 1, 1999 Recommendation, the court finds that defendant may apply Section 8.110.52A,[3] to trusts created before August 10, 1993, and that defendant does not violate the subclass's rights under the Social Security Act when it analyzes their trusts under the former Section 1396a(k).

### 3) Are the members of Subclass (b) of the Class "categorically eligible" for Medicaid benefits?

The court finds that for the reasons set forth in Section IV. (3) of the June 1, 1999 Recommendation, the members of subclass

---

1. The amendment provides that subsection (d) "shall apply without regard to—(I) the purposes for which a trust is established, (ii) whether the trustees have or exercise any discretion under the trust, (iii) any restrictions or when or whether distributions may be made from the trust, or (iv) any restrictions on the use of distributions from the trust." 42 U.S.C. § 1396p(d)(2)(C).

2. Under the 1993 amendment, section 1396p(d) shall not apply to a "[t]rust containing the assets of an individual under the age of 65 who is disabled...and which is established for the benefit of such individual...if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." 42 U.S.C. § 1396p(d)(4)(A).

3. The regulation states

   A. Trusts Established Before August 11, 1993
   In the case of a Medicaid qualifying trust, as defined in 42 U.S.C. Sec. 1396a(k), the amount of the trust property that is considered available to the applicant/recipient who established the trust (or whose spouse established the trust) is the maximum amount that the trustee(s) is permitted under the trust to distribute to the individual assuming the full exercise of discretion by the trustee(s) for the distribution of the maximum amount to the applicant/recipient. This amount of property is deemed available resources to the individual whether or not it is actually received.

   10 C.C.R. 2505–10 at § 8.110.52

(b) of the class should be found to be categorically eligible for Medicaid benefits.

### 4) Is the State Manual preempted?

For the reasons set forth in section IV. (5) the court finds that for subclass (b) of the class, the Supremacy Clause is not violated and the state Manual is not preempted by 42 U.S.C. § 1396(a)(17)(B). Defendant properly may apply the regulation to trusts established before August 11, 1993 under the analysis set forth in Section IV. (1) of the June 1, 1999 Recommendation.

### 5) What is defendant's responsibility when individuals transfer property allegedly without fair consideration?

In Defendant's Motion for Summary Judgment on Amended Complaint, he apparently renews the same arguments made in support of his Motion for Summary Judgment filed August 28, 1998. In accordance with the court's reasoning as set forth in Section IV. (6) of the June 1, 1999 Recommendation, the court recommends, with respect to Farmer's trust, that summary judgment be denied because of genuine issues of material fact. From a reading of the definition of the certified class, it does not appear that any of the class members have claims similar to Farmer's with respect to defendant's claim that Farmer's trust was terminated without fair consideration.

### 6) What due process rights, if any, does the class have?

Defendant reargues that there was not any due process deprivation when plaintiffs and intervenor were denied eligibility for Medicaid. It is unclear whether defendant raises this argument as to the class, since the court previously found that, with respect to the plaintiffs and intervenor, the record was incomplete so that a determination of any due process violations could not be made on summary judgment. As set forth in section IV. (8) of the June 1, 1999 Recommendation, summary judgment should be denied on due process issues due to an incomplete record.

### 7) Ramey and Farmer Trusts

In its May 17, 1999 Motion for Summary Judgment, defendant again argues that the Ramey trust was a Medicaid Qualifying Trust rendering Ramey ineligible for benefits and that the Farmer trust was appropriately considered a countable resource. Because each trust must be considered individually, it does not appear that the class has any additional claims with regard to the way the defendant analyzed the Ramey and Farmer trusts. For the reasons set forth in section IV. (3) of the June 1, 1999 Recommendation, the court has found that the Ramey trust did not disqualify Ramey from Medicaid benefits, while the Farmer trust did disqualify Farmer from the receipt of Medicaid benefits.

## IV. RECOMMENDATION

For the reasons stated herein, it is hereby

**RECOMMENDED** that the Class Motion for Summary on Class Claims [filed May 13, 1999] be **granted in part** and **denied in part** as set forth in this Recommendation and the June 1, 1999 Recommendation. It is further

**RECOMMENDED** that Defendant's Motion for Summary Judgment on Amended Complaint [filed May 17, 1999] be **granted in part** and **denied in part** as set forth in the June 1, 1999 Recommendation. It is further

**RECOMMENDED** that declaratory judgment enter for the class and against defendant on Subclass (b)'s claim of categorical eligibility (second claim for relief) and for the entire class on the availability of a § 1983 action (fifth claim for relief). It is further

**RECOMMENDED** that Subclass (a)'s first (repealed law) and the entire class's fourth (preemption) claims for relief be **dismissed** and that judgment enter for

defendants and against the class on the first and fourth claims for relief. It is further

RECOMMENDED defendant's motion for summary judgment on Farmer's claim of improper assessment under § 1396p(c)(1)(E)(i)(I) (plaintiffs' third claim for relief) be **denied** because of the existence of genuine issues of material fact. It is further

RECOMMENDED that the defendant's motion for summary judgment on the issues of whether the administrative law judges' decisions were arbitrary and capricious or otherwise violated plaintiffs' due process rights (plaintiffs' sixth claim for relief) be **denied** due to the insufficient record before the court. It is further

RECOMMENDED that summary judgment be granted on plaintiffs' ninth claim for relief (preemption) as set forth in Section IV. (5) of the June 1, 1999 Recommendation. It is further

RECOMMENDED that **declaratory judgment** enter finding (1) that the class may bring an action under 42 U.S.C. § 1983 for termination of Medicaid benefits; (2) that the state methodology for evaluating trust assets for the Subclass (a) is more restrictive than mandated by the Social Security Act; (3) that, as recipients of SSI benefits members of Subclass (b) are categorically eligible for Medicaid benefits; (4) that the state correctly found plaintiff Farmer's trust to be a countable resource; (5) that any class members whose benefits were terminated be reimbursed for Medicaid benefits wrongfully terminated in accordance with the reasoning set forth in the June 1, 1999 Recommendation; and (6) that the class members be awarded their reasonable costs and attorney fees incurred in bringing successful claims as permitted under 42 U.S.C. § 1988. It is further

RECOMMENDED that a **permanent injunction** enter against the defendant prohibiting him from determining that cer-tain trusts established before August 11, 1993 are countable resources rendering beneficiaries ineligible for Medicaid benefits as set forth in the June 1, 1999 Recommendation.

**The undersigned magistrate judge will not issue a recommendation on that part of the Stipulation [filed June 17, 1999] concerning Rule 23 Fed.R.Civ.P. matters as the parties have not consented to referral to the magistrate judge and because the District Judge has not referred those matters.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

July 6, 1999.